Filed 12/28/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S236728 |
| v. | ) | |
| | ) | Ct.App. 2/4 B260774 |
| JAMES BELTON FRIERSON, | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. GA043389 |
| _____ | ) | |

The Three Strikes Reform Act of 2012 (the "Reform Act" or the "Act"), amended the Three Strikes sentencing scheme. The Act reduced the class of defendants who are eligible for indeterminate prison terms following a third felony conviction. It also permitted some inmates serving a Three Strikes term to petition for modification of their current sentences. The Act excluded resentencing under certain circumstances. The People acknowledge that they bear the burden of establishing that a petitioner is ineligible for resentencing. The question here is what degree of proof is required to discharge that burden. We hold that proof beyond a reasonable doubt is required.

## I. BACKGROUND

### A. *Statutory Background*

We recently considered another aspect of the Reform Act in *People v. Conley* (2016) 63 Cal.4th 646 (*Conley*). The background provided there is helpful to an analysis of the current question. "Enacted 'to ensure longer prison sentences

1

and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses' (Pen. Code, former § 667, subd. (b), as amended by Stats. 1994, ch. 12, § 1, pp. 71, 72), the Three Strikes law 'consists of two, nearly identical statutory schemes.' [Citation.] The first of these schemes was enacted by the Legislature in March 1994. (Pen. Code, former § 667, subds. (b)–(i).) The second was enacted by ballot initiative in November of the same year. (Pen. Code, former § 1170.12, added by Prop. 184, as approved by voters, Gen. Elec. (Nov. 8, 1994) (Proposition 184).) The two statutes differ only in minor respects not relevant here.[1] [Citation.]

"Under the Three Strikes law as originally enacted, a felony defendant who had been convicted of a single prior serious or violent felony (a second strike defendant) was to be sentenced to a term equal to 'twice the term otherwise provided as punishment for the current felony conviction.' (Pen. Code, former § 1170.12, subd. (c)(1).) By contrast, a defendant who had been convicted of two or more prior serious or violent felonies (a third strike defendant) was to be sentenced to 'an indeterminate term of life imprisonment with a minimum term of' at least 25 years. (Pen. Code, former § 1170.12, subd. (c)(2).)" (*Conley, supra,* 63 Cal.4th at p. 652.) Thus, under the original law, a defendant previously convicted of two qualifying strikes was subject to a life term if he was subsequently convicted of *any* new felony, regardless of whether it was a serious or violent one.

"The Reform Act changed the sentence prescribed for a third strike defendant whose current offense is not a serious or violent felony. [Citation.] Under the Reform Act's revised penalty provisions, many third strike defendants

---

[1] Because the relevant portions of the legislative and initiative versions of the Three Strikes law are the same, for convenience, we will hereafter refer to the initiative version. (Pen. Code, § 1170.12.)

are excepted from the provision imposing an indeterminate life sentence (see Pen. Code, § 1170.12, subd. (c)(2)(A)) and are instead sentenced in the same way as second strike defendants (see *id*., subd. (c)(2)(C)):  that is, they receive a term equal to 'twice the term otherwise provided as punishment for the current felony conviction' (*id*., subd. (c)(1)).  A defendant does not qualify for this ameliorative change, however, if his current offense is a controlled substance charge involving large quantities (*id*., subd. (c)(2)(C)(i)), one of various enumerated sex offenses (*id*., subd. (c)(2)(C)(ii)), or one in which he used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury (*id*., subd. (c)(2)(C)(iii)).  The ameliorative provisions of the Reform Act also do not apply in cases in which the defendant was previously convicted of certain enumerated offenses, including those involving sexual violence, child sexual abuse, homicide or attempted homicide, solicitation to commit murder, assault with a machine gun on a peace officer or firefighter, possession of a weapon of mass destruction, or any serious or violent felony punishable by life imprisonment or death. (§ 1170.12, subd. (c)(2)(C)(iv)(I)–(VIII).)  The Act provides that these disqualifying factors must be pleaded and proved by the prosecution.  (§ 1170.12, subd. (c)(2)(C).)

"In the Reform Act, the voters also established a procedure for 'persons presently serving an indeterminate term of imprisonment' under the prior version of the Three Strikes law to seek resentencing under the Reform Act's revised penalty structure.  (Pen. Code, § 1170.126, subd. (a).)  Under section 1170.126, 'within two years after the effective date of the act . . . or at a later date upon a showing of good cause,' such persons can file a petition for a recall of sentence before the trial court that entered the judgment of conviction.  (*Id*., subd. (b).)  If the petitioner would have qualified for a shorter sentence under the Reform Act version of the law, taking into consideration the disqualifying factors (§ 1170.126,

3

subds. (e), (f)), section 1170.126 provides that he 'shall be resentenced pursuant to [the Reform Act] unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety' (*id.*, subd. (f)).  In exercising this discretion, the court may consider the defendant's criminal conviction history, the defendant's disciplinary record and record of rehabilitation while incarcerated, and '[a]ny other evidence the court . . . determines to be relevant.' (*Id.*, subd. (g).)" (*Conley, supra,* 63 Cal.4th at pp. 652-653.)  The Act, therefore, enacted two kinds of reforms:  prospective, by exempting some newly-charged defendants from an indeterminate term, and retrospective, by permitting resentencing for some already convicted.

Serious and violent felonies are defined in the Penal Code in two ways:  by definition or because of the circumstances of their commission.  Rape, robbery, murder and other listed offenses are serious or violent by definition.  (See Pen. Code,[2] §§ 667.5, subd. (c), 1192.7, subd. (c).)  Other felonies may qualify as serious based on a defendant's conduct during their commission.  (See, e.g., § 1192.7, subd. (c)(8), (23).)  The circumstances of commission requirements are similar to, but different from, the factors set out in the Reform Act's resentencing provisions.  (See discussion *post.*)

B. *Facts and Procedure*

Defendant James Frierson and his girlfriend, Lynn Thompson, had a stormy relationship.  In September 1998, he struck her in the head, broke her car windshield, and threatened to kill her.  Frierson was jailed but the couple reconciled and married.  When Frierson was subsequently sent to state prison,

---

[2]     Subsequent statutory references are to the Penal Code unless otherwise noted.

Thompson told him she was suing for divorce. Frierson responded by sending Thompson a series of letters, threatening to "track [her] down," and saying she "better run fast." He wrote: "I will find you, Lynn, and kill you for causing me so much pain. I want you to feel what I am going through." He indicated he would come to her job or son's school to find her. After Thompson filed divorce papers and secured a restraining order, Frierson sent more letters, threatening to rape and kill her.

A jury convicted defendant of stalking and stalking while violating a restraining order.[3] (§ 646.9, subds. (a), (b).) Frierson had been convicted of robbery (§ 211) in 1981 and 1990, and of inflicting corporal injury on a cohabitant (§ 273.5, subd. (a)) in 1998. The robbery convictions qualified as separate strikes. (§§ 667.5, subd. (c)(9), 1170.12, subd. (b)(1), 1192.7, subd. (c)(19).) Accordingly, he was sentenced to a term of 25 years to life in prison on one stalking count.

After passage of the Reform Act, defendant petitioned for resentencing. Stalking is not a serious or violent felony by definition. The People opposed resentencing, however. They urged Frierson was ineligible for relief because, during commission of that offense, he "intended to cause great bodily injury to another person."[4] (§ 1170.12, subd. (c)(2)(C)(iii); see also § 1170.126, subd. (e)(2).)

The court granted the People's unopposed motion to admit six exhibits, which included trial testimony by Thompson and two officers, as well as a May 2014 letter Thompson wrote to the sentencing court. The court denied

---

[3] Defendant was also convicted of two misdemeanor counts of disobeying a court order (§ 166, subd. (a)(4)), for which he received concurrent terms.
[4] The People also urged that resentencing Frierson would pose an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f).)

resentencing, reasoning Frierson was ineligible because, "even assuming arguendo that the offense of stalking does not involve an intent to cause great bodily injury, the factual circumstances of petitioner's stalking clearly evidence an intent to cause great bodily injury." The court concluded that "the People have amply met their burden of showing *by a preponderance of evidence* that Petitioner is ineligible for resentencing because petitioner '[d]uring the commission of the current offense, . . . intended to cause great bodily injury to another person' ([Pen. Code, §] 1170.12[, subd.] (c)(2)(C)(iii))." The Court of Appeal affirmed.

## II. DISCUSSION

A. *Burden of Proof for Prospective Application of the Three Strikes Law*

The Three Strikes law, both before and after the Reform Act, does not directly mention the applicable burden of proof. However, the Three Strikes law has always required that a qualifying prior conviction be "pled and proved" by the prosecution. (Pen. Code, § 1170.12, subds. (a), (c)(1), (c)(2)(A).) It has long been settled that "[t]he burden is on the state as in the case of the trial of other factual matters in issue to prove beyond a reasonable doubt those alleged prior convictions challenged by a defendant." (*In re Yurko* (1974) 10 Cal.3d 857, 862; see *People v. Richardson* (2008) 43 Cal.4th 959, 1032; *People v. Newman* (1999) 21 Cal.4th 413, 418.) Specifically, courts have held or acknowledged that the prosecution bears the burden of proving beyond a reasonable doubt that a prior conviction is a serious or violent felony. (See *People v. Miles* (2008) 43 Cal.4th 1074, 1093; *People v. Delgado* (2008) 43 Cal.4th 1059, 1070; *People v. Ledbetter* (2014) 222 Cal.App.4th 896, 900; *People v. Towers* (2007) 150 Cal.App.4th 1273, 1277.) Evidence Code section 501 provides that "[i]nsofar as any statute, except [Evidence Code] Section 522 [concerning insanity pleas], assigns the burden of proof in a criminal action, such statute is subject to Penal Code Section 1096."

6

Penal Code section 1096 articulates the presumption of innocence and provides that "the effect of this presumption is only to place upon the state the burden of proving him or her guilty beyond a reasonable doubt."

After passage of the Reform Act, the prosecution bears an additional burden to secure imposition of a third strike sentence. If the current offense is *not* a serious or violent felony, the prosecution must plead and prove facts that demonstrate the defendant is not entitled to the ameliorative changes of the Act. The People do not dispute that stalking is not listed as a serious or violent felony by definition. Accordingly, if Frierson had been prosecuted for stalking Thompson after the Reform Act's passage, they could only have secured a third strike sentence if they had pled and proved he had two qualifying strikes and, while committing the current stalking offense, he intended to inflict great bodily injury on Thompson.[5] The People concede that prospective application of the Three Strikes law "requires the prosecution to prove any disqualifying factors beyond a reasonable doubt . . . ." (Cf. *In re Winship* (1970) 397 U.S. 358, 361-364.)

B. *Burden of Proof for Ineligibility Criteria at Resentencing*

The Reform Act's resentencing mechanism has three separate aspects: (1) the initial petition for recall of the sentence, (2) a determination of eligibility, and (3) the court's discretionary decision whether the defendant poses an unreasonable risk of danger to public safety. The defendant must file a petition for

---

[5]    As noted, there was no evidence that Frierson used or was armed with a firearm or deadly weapon when he stalked Thompson. (Pen. Code, § 1170.12, subd. (c)(2)(C)(iii).) Likewise, there was no evidence that the current offense was an applicable sex or drug crime, or that the nature of his prior convictions were of a kind that would preclude a second strike term. (§ 1170.12, subd. (c)(2)(C)(i)-(ii), (iv).)

7

recall of sentence (§ 1170.126, subd. (b)) and "specify all of the currently charged felonies" that resulted in a third strike sentence, as well as "all of the prior convictions alleged and proved under" the Three Strikes law. (§ 1170.126, subd. (d).)

"[T]he petitioning defendant has the *initial* burden of establishing eligibility, and if that burden is met, then the prosecution has the opportunity to establish ineligibility on other grounds." (*People v. Johnson* (2016) 1 Cal.App.5th 953, 963.) Placing the initial burden on the defendant is consistent with the electorate's clear intent that resentencing not be automatic. A defendant must seek out relief, and do so within a specified time period.

Once that initial showing is made by the defendant, the prosecution bears the burden of proving that one of the ineligibility criteria applies. The People do not argue otherwise. Placing the burden of proving ineligibility on the prosecution is consistent with the recall statute's statement that it should apply to one "whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).)

Turning to Frierson's petition, stalking is not, by definition, a serious or violent felony. Thus, the People could only prove he was ineligible in one of two ways. First, they could offer evidence that defendant's stalking of Thompson was a serious felony because he (a) personally used a firearm or other dangerous or deadly weapon, or (b) personally inflicted great bodily injury on Thompson. (§ 1192.7, subd. (c)(8), (23).) Such proof would establish his current offense for stalking was a serious felony because of the circumstances of its commission. Alternatively, they could prove that, while stalking Thompson, he *intended* to cause great bodily injury on her. The People argued the latter. Such proof would bring Frierson's current offense within the exclusion provision of sections 1170.12, subdivision (c)(2)(C)(iii) and 1170.126, subdivision (e)(2).

8

The court, in assessing the People's opposition, applied a preponderance of evidence standard. This application is consistent with *People v. Osuna* (2014) 225 Cal.App.4th 1020. *Osuna* concluded that "a trial court need only find the existence of a disqualifying factor by a preponderance of the evidence" (*id*. at p. 1040), citing Evidence Code section 115, which states that "[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." *Osuna* reasoned in part that "section 1170.126 does not impose the same requirements in connection with the procedure for determining whether an inmate already sentenced as a third strike offender is eligible for resentencing as a second strike offender" (*id*. at p. 1033), noting that it omits any pleading and proof requirement.

*People v. Arevalo* (2016) 244 Cal.App.4th 836 disagreed with *Osuna* and concluded the beyond a reasonable doubt standard applies to ineligibility factors for resentencing. *Arevalo* noted the parallel structure of the prospective and retrospective portions of the Reform Act and reasoned "not only must there be a heightened standard of proof for section 1170.126 resentencing eligibility determinations, but that—in order to safeguard the intended parallel structure of the Act—the heightened standard of proof should be beyond a reasonable doubt. Under a lesser standard of proof, nothing would prevent the trial court from disqualifying a defendant from resentencing eligibility consideration by completely revisiting an earlier trial, and turning acquittals and not-true enhancement findings into their opposites." (*Id*. at p. 853.)

The parties' arguments here mirror the reasoning of *Arevalo* and *Osuna*. Defendant argues the parallel structure of the prospective and retrospective portions of the Reform Act reflects an intent that the same beyond a reasonable doubt standard applies for the finding of ineligibility for a second strike sentence in both contexts. The People urge that the lack of a pleading and proof

9

requirement in the resentencing provision reflects an intent that the default preponderance of the evidence standard of Evidence Code section 115 should apply.

Defendant has the better view. The preponderance standard of Evidence Code section 115 applies "[e]xcept as otherwise provided by law . . . ." Although the resentencing provision of Penal Code section 1170.126 does not expressly reference a standard of proof, as explained below, we conclude that the parallel construction of the prospective and retrospective portions of the Reform Act reflects an electoral intent to apply the same standard for proof of ineligibility for second strike sentencing in both contexts. As such, the Reform Act "otherwise provide[s]" for a different standard of proof, beyond a reasonable doubt, and the default preponderance standard does not apply.

As *Arevalo* observed, we have previously noted that "the parallel structure of the Act's amendments to the sentencing provisions and the Act's resentencing provisions reflects an intent that sentences imposed on individuals with the same criminal history be the same, *regardless of whether they are being sentenced or resentenced*. Both the sentencing scheme and the resentencing scheme provide for a second strike sentence if the current offense is not a serious or violent felony, and they set forth identical exceptions to the new sentencing rules." (*People v. Johnson* (2015) 61 Cal.4th 674, 686 (*Johnson*), italics added.) We conclude the parallel structure of the Act and section 1170.126's wholesale incorporation of the ineligibility criteria of section 1170.12, subdivision (c)(2)(C) reflects an intent to apply the same burden of proof regardless of whether the Three Strikes law is being applied prospectively or retrospectively through a resentencing petition. The People's position would create an anomaly with respect to proof of the ineligibility factors. Although prospective application of such a factor would require proof of it beyond a reasonable doubt, the People's position would allow a

10

similar defendant seeking resentencing to be declared ineligible based upon a finding of the same factor supported by a preponderance of the evidence. Nothing in the parallel structure of the Act would suggest an electoral intent that similar defendants be subject to vastly different sentences simply by application of a different standard of proof.

We disagree with the People's suggestion that the failure to include a pleading and proof requirement in section 1170.126 reflected an intent to apply a different, and lesser, standard of proof. On this point, *People v. Conley, supra,* 63 Cal.4th 646, is instructive. There, the Reform Act became effective after Conley's sentencing but while his appeal was pending. He argued that he was entitled to *automatic* resentencing under the new provisions of the Three Strikes law without having to file a recall petition. He claimed the rule of *In re Estrada* (1965) 63 Cal.2d 740, should apply: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Id*. at p. 745.)

*Conley* rejected the claim, noting that "the Reform Act is not silent on the question of retroactivity" and section 1170.126 created "a special mechanism that entitles all persons 'presently serving' indeterminate life terms imposed under the prior law to seek resentencing under the new law." (*Conley, supra,* 63 Cal.4th at p. 657; see § 1170.126, subd. (a).) *Conley* further observed that the Act did "more than merely reduce previously prescribed criminal penalties" but also established

11

"a new set of disqualifying factors that preclude a third strike defendant from receiving a second strike sentence" and required such factors be pled and proved. (*Conley*, at p. 659.) We observed it was unclear how the pleading and proof requirement would apply to a defendant who had already been convicted and sentenced, especially with respect to factors that "prosecutors may have had no reason to plead and prove" before the Act. (*Ibid*.) While noting that "mini-trials for the sole purpose of determining" a disqualifying factor "would not be unprecedented," *Conley* concluded: "But the question before us is not whether such trials are possible. The question is whether this is the system the voters intended to create, though no provision of the Act contains any affirmative indication to that effect. We find it difficult to escape the conclusion that the Act does not address the complexities involved in applying the pleading-and-proof requirements to previously sentenced defendants precisely because the electorate did not contemplate that these provisions would apply. Rather, voters intended for previously sentenced defendants to seek relief under section 1170.126, which contains no comparable pleading-and-proof requirements." (*Id*. at pp. 660-661.)

Although *Conley* was addressing the retroactive application of the Three Strikes law's new ineligibility criteria, its reasoning regarding the awkward application of a pleading and proof requirement to an already-sentenced defendant applies equally here to explain why such a requirement was omitted from the resentencing statute. Section 1170.126 places upon *defendants* the burden of petitioning for resentencing and specifying their current and prior offenses, which would indicate initial eligibility. A pleading requirement aimed at *prosecutors* would not fit well under such a scheme. The statute simply requires that the court thereafter determine at the outset "whether the petitioner satisfies the criteria in subdivision (e)." (§ 1170.126, subd. (f).)

12

Thus, the most reasonable explanation for the omission of a pleading and proof requirement in the resentencing statute is not that this omission was an implicit comment on the applicable burden of proof, but simply that the ineligibility inquiry happens in a different procedural context. The Three Strikes law was amended for prospective application. In this context, a pleading and proof requirement makes sense. If the prosecution wishes to have a third strike sentence imposed, it must indicate what circumstance makes a defendant subject to an indeterminate sentence and prove that circumstance beyond a reasonable doubt at trial. By contrast, a resentencing proceeding under section 1170.126 necessarily looks backwards. "Although the statute refers to it as the 'current' conviction because it is the conviction for which the petitioner is seeking to be resentenced, the underlying case has been fully litigated. The trial has been held or a plea has been taken, and the defendant is serving his or her sentence." (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1337; see *People v. White* (2014) 223 Cal.App.4th 512, 527 [acknowledging the prospective and retroactive parts of the Reform Act]; *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1292 (*Kaulick*) [same].)

The People urge that because the current offense has been fully litigated, the preponderance standard is appropriate: "[I]mposing a beyond a reasonable doubt standard would in many cases make the prosecution unable to prove ineligibility even for those defendants who truly did have a disqualifying factor— merely because of the happenstance that the prosecution, having no need to prove such a factor years ago, made a less than complete record. Such a windfall for dangerous defendants would not fulfill the voters' intent."[6] However, nothing in

6    We have no occasion here to consider what kinds of evidence may be offered on the subject of eligibility at a resentencing hearing. The exhibits that

*(footnote continued on next page)*

13

the Reform Act's language suggests the electorate contemplated that a lower standard of proof should apply at resentencing to compensate for any potential evidentiary shortcoming at a trial predating the Act. As discussed, the parallel structure of the Act would suggest an opposite intent.

The primary difference between the prospective and retroactive portions of the Act supports application of a reasonable doubt standard as to ineligibility criteria. "The main difference between the prospective and the retrospective parts of the Act is that the retrospective part . . . contains an 'escape valve' from resentencing [for] prisoners whose release poses a risk of danger." (*Kaulick, supra,* 215 Cal.App.4th at p. 1293.) It is this " 'escape valve' " the electorate had envisioned would prevent dangerous felons from being released under the Reform Act, not application of a lower burden of proof as to ineligibility criteria. Indeed, that the scheme included an additional requirement for resentencing reflects the electorate was aware of the differences between the prospective and retrospective portions of the Act and explicitly distinguished between them when it desired.[7]

The determination whether a defendant poses an unreasonable risk of danger to public safety is discretionary (§ 1170.126, subd. (f)), and several Courts of Appeal have properly concluded that "[t]he facts upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence . . . and are themselves subject to [appellate] review for substantial evidence." (*People v. Buford* (2016) 4 Cal.App.5th 886, 901; see also *People v.*

---

*(footnote continued from previous page)*

were received at Frierson's hearing had been part of the record in the original prosecution proceedings.

[7] In light of our resolution, we do not address defendant's argument that due process requires application of the beyond a reasonable doubt standard.

14

*Flores* (2014) 227 Cal.App.4th 1070, 1075-1076; *Kaulick, supra,* 215 Cal.App.4th at pp. 1301-1305.) As *Kaulick* reasoned, "it is the general rule in California that once a defendant is eligible for an increased penalty, the trial court, in exercising its discretion to impose that penalty, may rely on factors established by a preponderance of the evidence. [Citation.] As dangerousness is such a factor, preponderance of the evidence is the appropriate standard." (*Id*. at p. 1305.) Defendant does not argue otherwise, and recognizes that "to adjust for situations in which a dangerous defendant is deemed *eligible* for a sentence recall, for whatever reasons including shortcomings in the record of the prior, the recall court has discretion to decline resentencing to safeguard the public."

Our conclusion is both consistent with the intent behind the Reform Act and harmonizes its prospective and retroactive portions. As we have explained: "There can be no doubt that the Reform Act was motivated in large measure by a determination that sentences under the prior version of the Three Strikes law were excessive. . . . But voters were motivated by other purposes as well, including the protection of public safety. The ballot materials explained that 'dangerous criminals are being released early from prison because jails are overcrowded with nonviolent offenders who pose no risk to the public.' [Citation.] Voters were told that the Reform Act would protect public safety by 'prevent[ing] dangerous criminals from being released early' [citation] and would have no effect on 'truly dangerous criminals' [citation]." (*Conley, supra,* 63 Cal.4th at p. 658; see *Johnson, supra,* 61 Cal.4th at p. 686.) The Reform Act expressly states it should apply to those "whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).) As noted, a prospective sentence under the Act could not be an indeterminate life term *unless* the prosecution establishes beyond a reasonable doubt that the defendant qualifies for a third strike term. Applying a reasonable doubt standard to proof of ineligibility

15

for resentencing preserves the parallel structure between the prospective and retroactive application of the Three Strikes law as contemplated by the Reform Act. Simultaneously, the trial court's discretion to deny resentencing to a defendant who poses an unreasonable danger to the public acts as a safeguard in cases where the record does not establish ineligibility criteria beyond a reasonable doubt. In exercising its discretion, the court may consider a wide variety of factors, such as the petitioner's whole criminal history, including "the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes," a petitioner's "disciplinary record and record of rehabilitation while incarcerated," and any other relevant evidence. (§ 1170.126, subd. (g)(1)-(3).) Placing on the People a burden of proof beyond a reasonable doubt to establish ineligibility for resentencing, while permitting the court to exercise its broader discretion to protect public safety, is an approach that comports with the overall structure and language of the Act and its dual intent.[8]

---

[8] We disapprove the following cases to the extent they are inconsistent with our opinion: *People v. Perez* (2016) 3 Cal.App.5th 812, 833; *People v. Newman* (2016) 2 Cal.App.5th 718, 727-732; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1038-1040.

### III. DISPOSITION

The Court of Appeal's judgment is reversed and the matter is remanded with directions to return the case to the trial court for further proceedings on defendant's petition.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**MILLER, J.**[*]

---

[*]  Associate Justice of the Court of Appeal, First Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Frierson

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 1 Cal.App.5th 788
**Rehearing Granted**

_____

**Opinion No.** S236728
**Date Filed:** December 28, 2017

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** William C. Ryan

_____

**Counsel:**

Richard B. Lennon and Suzan E. Hier, under appointments by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews, Louis W. Karlin and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Richard B. Lennon
California Appellate Project
520 S. Grand Avenue, 4th Floor
Los Angeles, CA  90071
(213) 243-0300

Robert C. Schneider
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 269-6064