Filed 12/7/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B303099 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA071098) |
| v. | |
| DAVID DANIEL RODRIGUEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mike Camacho, Judge. Reversed and remanded.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Michael J. Wise, Charles Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury acquitted David Daniel Rodriguez and Alonso Delgado of the first degree premeditated murder of Frankie Lopez, found both men guilty of second degree murder and also found true special allegations a principal had intentionally discharged a firearm causing Lopez's death and the murder had been committed for the benefit of a criminal street gang. Rodriguez and Delgado were each sentenced to state prison terms of 40 years to life. This court affirmed the convictions on direct appeal. (*People v. Delgado* (May 31, 2007, B187062) [nonpub. opn.].)

On January 7, 2019 Rodriguez petitioned to vacate his murder conviction and for resentencing under Penal Code section 1170.95.[1] Rodriguez attached to the petition a copy of CALJIC No. 3.02, the natural and probable consequences instruction given at his trial. After appointing counsel to represent Rodriguez and conducting a hearing following issuance of an order to show cause, the superior court denied the petition, finding, "[T]here is sufficient evidence in the record to support an express malice murder theory for purposes of the standard of proof required that would implicate Mr. Rodriguez in the killing of Mr. Frankie Lopez."

On appeal Rodriguez contends the superior court committed prejudicial error by applying an incorrect standard of proof and by relying on inadmissible hearsay evidence to support its finding as to express malice. Rodriguez also argues, when evaluated under the proper standard, the court's finding he either was the actual shooter or directly aided and abetted Lopez's murder was not supported by substantial evidence.

---

[1] Statutory references are to this code.

As the court of appeal did recently in *People v. Lopez* (2020) 56 Cal.App.5th 936 (*Lopez*), we hold section 1170.95 requires the prosecutor to prove beyond a reasonable doubt each element of first or second degree murder under current law to establish a petitioner's ineligibility for relief under that statute. We agree with Rodriguez the superior court here used an improper standard, concluding he was ineligible for relief under section 1170.95 because the record could support a finding of express malice murder beyond a reasonable doubt, rather than based on its own finding beyond a reasonable doubt that Rodriguez would be guilty of murder within the meaning of sections 188 and 189, as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). Accordingly, we reverse the order denying Rodriguez's petition and remand for a new evidentiary hearing on Rodriguez's eligibility for relief.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Rodriguez's Conviction for Murder*

The People's theory of the case was retaliation for an earlier, gang-related shooting of Rodriguez, who, like his codefendant Delgado, was a Pomona Sur Trece gang member.

On December 25, 2004 at approximately 8:00 p.m., an unidentified man knocked on Luci Garcia's apartment door and asked for Frankie Lopez, her son, by name and said he wanted to speak to him.[2] Lopez, who was standing behind his mother when she opened the door, followed the man from the apartment and closed the door. Garcia again opened the door and saw Lopez

---

[2] Our summary of the evidence is primarily based on the statement of facts in this court's 2007 opinion, which both Rodriguez and the Attorney General agree is accurate.

walking down the hallway with the unidentified man and Delgado, who looked back and made eye contact with her.

Lopez's sister went into the hallway a few seconds after Lopez left the apartment and saw Lopez with Delgado standing on the porch at the end of the hallway. Rodriguez was off the porch in the parking lot/alley. The unidentified man was still standing in the hallway. Suddenly, Lopez began running toward his sister. The sister heard a gunshot. A neighbor heard a voice say "Get him, dog. Get him." After a second shot was fired, Lopez fell to the ground. He died from a gunshot wound to the back of his head.

Approximately three weeks prior to Lopez's shooting Rodriguez had fought in the parking lot of Lopez's apartment building with Anthony Coronado, a member of the rival gang Azusa 13, because, according to Rodriguez, Coronado "wanted to come and talk shit to me, and disrespected me." Coronado had previously lived with Lopez's family for approximately two years and was a friend of Lopez. (Lopez's sister said Coronado was "like a cousin.") A week or two after the fight Rodriguez was shot in the back while he was at a park across the street from the apartment building. Lopez's sister testified she was outside her apartment just before Rodriguez got shot and saw Coronado cover his face with a bandana and run across the street to the park with a rifle. After Lopez's sister heard shots fired, Coronado ran back to her apartment, where he left the rifle. Although Rodriguez claimed he did not know who shot him, he admitted in a videotaped interview with detectives, which was played for the jury, he knew there would be retaliation for his fight with Coronado.

Delgado explained the motivation for attacking Lopez, who was not a gang member, in a tape recorded police interview introduced at Delgado and Rodriguez's joint trial only as to Delgado. Delgado admitted he had gone to Lopez's door, but claimed he had walked back to the car and was opening the car door when the shooting occurred and did not know the other men intended to shoot Lopez. Delgado told detectives his "homies" wanted Delgado to come with them to talk to Lopez because "Frankie had everything to do with all this that happened. . . . He was the main person they had to kill for every single thing. . . . The fool that shot [Rodriguez] wasn't even a concern." Delgado explained his fellow gang members' perspective, "Because if we take [Frankie] out, we don't got to worry about this fool coming over here no more doing that, cause' [*sic*] Frankie can't call them and tell them yea sur trece is right there in the park. . . . Frankie can't do that no more. He can't shoot at us, and run and hide in Frankie's house until the police leave again, he can't do that no more." Delgado denied Rodriguez had been present but would not identify the others who were there. He also claimed his friends had told him they were not going to kill Lopez; but Delgado acknowledged he knew they were taking a gun and said to his friends, "You taking a gun for a reason."

The jury was instructed on first and second degree murder; express and implied malice; accomplice liability; and, pursuant to CALJIC No. 3.02, murder as the natural and probable consequence of the target crime of misdemeanor assault (§ 240). The jury found Delgado and Rodriguez not guilty of first degree murder, but guilty of second degree murder. It also found true special allegations a principal had intentionally discharged a firearm causing death and the murder had been committed for

5

the benefit of a criminal street gang. Each defendant was sentenced to an aggregate state prison term of 40 years to life: 15 years to life for second degree murder and an additional consecutive term of 25 years to life pursuant to section 12022.53, subdivisions (d) and (e)(1).

In affirming both judgments on appeal we rejected, among other arguments, Delgado's contentions it was impermissible as a matter of law to base a murder conviction under the natural and probable consequences doctrine on a minor target offense such as misdemeanor assault and, in any event, the evidence was insufficient to support the finding Lopez's murder was the natural and probable consequence of the intended assault. We also refused to adopt Rodriguez's argument that individuals who did not personally use a firearm and were only liable for one of the offenses enumerated in section 12022.53, subdivision (a), under the natural and probable consequences doctrine, should not be considered "principals" for purpose of the firearm enhancement in section 12022.53, subdivision (e)(1).[3] We did not discuss any other theory of liability for murder in our opinion.

2. *Rodriguez's Petition for Resentencing*

Rodriguez, representing himself, petitioned to vacate his murder conviction pursuant to section 1170.95 on January 7, 2019, six days after the effective date of Senate Bill 1437, which limited the felony murder rule and eliminated the natural and probable consequences doctrine as it relates to murder through

---

[3]    As we explained, "Because he did not directly aid and abet Frankie's murder (that is, murder was not the target crime), Rodriguez maintains he should not be considered a principal for purposes of the firearm enhancement under section 12022.53, subdivision (e)(1)."

amendments to sections 188 and 189.  In a declaration supporting the petition Rodriguez stated, in part, "At trial the jury was instructed on the doctrine of natural and probable consequences CALJIC 3.02 [citation] attached as Exhibit B. Further the District Attorney argued that both defendants were guilty under the natural and probable consequences theory." Rodriguez averred he could not be convicted of first or second degree murder as of January 1, 2019 "due to the enactment of changes to Penal Code 188."  Rodriguez requested the court reappoint as his counsel the lawyer who had represented him at trial.

After reviewing the petition, the court ruled Rodriguez was entitled to counsel and granted his request for reappointment of counsel who had represented him at trial.[4]  The court also granted the People's request for an extension of time to file an informal opposition to the petition.

In its initial opposition the People contended Senate Bill 1437 was unconstitutional.  Counsel for Rodriguez filed a brief responding to that issue.  The People filed a further opposition arguing the petition should be denied on the merits based on the trial record.  After asserting the testimony of Lopez's sister concerning the location of Rodriguez, Delgado and the unidentified third man supported a finding Rodriguez was the actual shooter, the People argued, "The record here contains

---

[4]     A petition to vacate a murder conviction pursuant to section 1170.95 is to be filed with the court that sentenced the petitioner.  (§ 1170.95, subd. (b)(1).)  Judge Robert M. Martinez, who had presided at trial and sentenced Rodriguez, retired in 2018.  Accordingly, Rodriguez's petition was transferred to Judge Mike Camacho.

substantial evidence from which the jury could have found beyond a reasonable doubt that [Rodriguez] knew of and shared Delgado's and the unidentified male's intent to kill Frankie and acted to further the shooting."

Rodriguez's counsel responded, emphasizing that neither Rodriguez nor Delgado had been charged as the actual shooter and that the jury found them not guilty of first degree murder, suggesting the jury did not believe they had gone to Lopez's apartment with the intent to commit murder.

The court issued an order to show cause and set a formal hearing for November 27, 2019.

3.  *The OSC Hearing and the Court's Ruling*

At the outset of the hearing on its order to show cause, after stating it had read the parties' papers and was familiar with the circumstances leading to the verdicts at Rodriguez's trial, the court invited argument "as to whether or not there is a theory of liability in the record absent additional evidence that could support the defendant's liability for second degree murder." The court added, "Before I do that, I think, it's uncontested that there is no evidence in the record that could link Mr. Rodriguez to being the actual killer, in other words, the actual shooter.  The evidence is insufficient to support that. . . .  The issue is whether or not Mr. Rodriguez as a non-shooter can still be held criminally [liable] for the killing of Mr. Frankie Lopez other than on a theory of natural and probable consequences."

After hearing from Rodriguez's counsel, the court made the following observations, "I think the issue that we are now left to resolve is whether or not there is another theory of liability other than natural and probable consequences that could still support beyond a reasonable doubt, which is the standard, liability for

8

second degree murder. . . .  The evidence is pretty much uncontested that Mr. Rodriguez did take an active part in setting up that scenario that ultimately resulted in the shooting death.  I think more so than anyone else in the record Mr. Rodriguez had a motive to do harm to Frankie Lopez.  That is supported by substantial evidence that Frankie Lopez, evidently, harbored a rival gang member from the Azusa 13 gang by the name of Anthony Coronado, which certainly Mr. Rodriguez had issues with . . . .”

Relying on Delgado's statement to police, the court explained its understanding of why, given the ongoing dispute between Rodriguez and Coronado, Lopez and not Coronado was selected as the target.  Then, after acknowledging there was an unidentified third person who participated at the outset of the episode, the court stated, “There is absolutely no evidence in the record to support an argument that that person was involved in any way in the killing of Frankie Lopez.  But we do know there were at least two people involved, Mr. Rodriguez being one of them.”  The court then reasoned one of the two men was the shooter; the second was a direct aider and abettor who had shouted, “Get him, Dog,” proving express malice.

During the prosecutor's comments, which included the argument Rodriguez could be found guilty of first degree murder under a lying-in-wait theory and implied malice murder, the court stated, “I know that the law requires, for purposes of this hearing, [the court] to review the record and determine by way of evidence whether or not there is evidence in the record beyond a reasonable doubt that could support a murder conviction regardless of whether or not it was first or second degree.”  After both counsel addressed whether the People were entitled to

9

assert theories of liability that had not been argued at trial, the court restated its view, "The defendant is entitled to be resentenced if, in fact, there is no other evidence in the record that could support any alternative theory regardless of whether or not the People relied upon that during the trial."

Reiterating the significance of the "Get him, Dog" comment, which proved express malice by the speaker, the court said its tentative finding, subject to final comments by counsel, was "to find there is sufficient evidence in the record to support an express malice murder theory for purposes of the standard of proof required that would implicate Mr. Rodriguez in the killing of Mr. Frankie Lopez." Rodriguez's counsel attempted to persuade the court to change its view, arguing, if there was insufficient evidence Rodriguez was the shooter and insufficient evidence to know what role the unidentified third person played, then the evidence was insufficient to prove it was Rodriguez who said, "Get him, Dog."

The court was unconvinced: "Although it was mentioned in the trial evidence about the third person, there is zero evidence that I have seen that implicated this third person, the person unidentified, as doing anything other than simply being present at the time the shots were fired, which means the evidence points to Mr. Rodriguez being at least at the very minimum a direct aider and abettor because those words can be attributed to him if he is the non-shooter. If there [are] only two people involved, they were both equally liable for the express malice murder of Frankie Lopez. So that's my finding. I think it's supported in the record. I think the analysis is appropriate. It is not overreaching in any respect. So the [petition] for resentencing under 1170.95 is respectfully denied."

The minute order from the hearing on November 27, 2019 stated the petition was denied. No written explanation for the ruling was provided.

**DISCUSSION**

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437, effective January 1, 2019, significantly modified the law relating to accomplice liability for murder. In its uncodified findings and declarations the Legislature stated, "It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The Legislature also declared, "Except as stated in subdivision (e) of Section 189 of the Penal Code [relating to first degree felony murder], a conviction for murder requires that a person act with malice aforethought. A person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (*Id.*, § 1, subd. (g).)

The Legislature accomplished its goal by adding subdivision (a)(3) to section 188, and subdivision (e) to section 189. New section 188, subdivision (a)(3), effectively eliminates the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder by providing, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." New section 189,

11

subdivision (e), limits the felony murder exception to the malice requirement, permitting a murder conviction for a death that occurred during the commission of certain serious felonies only when other specified circumstances relating to the defendant's individual culpability have been proved.[5]

Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. The petition must include a declaration by the petitioner that he or she is eligible for relief under section 1170.95, the superior court case number and year of the petitioner's conviction and a statement whether the petitioner requests the appointment of counsel. (§ 1170.95, subd. (b)(1); see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 326-327, review granted Mar. 18, 2020, S260493.)

---

[5] Section 189, subdivision (e), provides with respect to a participant in the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), in which a death occurs—that is, as to those crimes that provide the basis for the charge of first degree felony murder—that an individual is liable for murder "only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

If the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-step process for the court to determine if an order to show cause should issue: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."  (See *People v. Verdugo, supra*, 44 Cal.App.5th at p. 327.)

Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts.  (§ 1170.95, subd. (d)(1); see *People v. Verdugo, supra*, 44 Cal.App.5th at p. 327.)  At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)  The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, review granted Mar. 18, 2020, S260598.)

2.  *Standard of Review*

As discussed, section 1170.95, subdivision (d)(3), provides, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove

13

beyond a reasonable doubt, that the petitioner is ineligible for resentencing." The proper interpretation of that language—that is, the correct standard to be applied by the superior court in evaluating eligibility for resentencing—is a question of law that we determine de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71; *Greene v. Marin County Flood Control & Water Conservation Dist.* (2010) 49 Cal.4th 277, 287; *People v. Drayton, supra,* 47 Cal.App.5th at p. 981.)

As appellate courts generally do, we apply a deferential standard of review in determining whether the evidence supports any of the superior court's factual findings. (*Lopez, supra,* 56 Cal.App.5th at p. 953 [substantial evidence standard of review applies to findings of fact in postjudgment orders including those made pursuant to section 1170.95]; see *People v. Prunty, supra,* 62 Cal.4th at p. 71; *People v. Drayton, supra,* 47 Cal.App.5th at p. 981; see also *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095-1096 ["'Where an appeal involves the interpretation of a statute . . . , the issue on appeal is a legal one, which we review de novo. [Citation.] Where the trial court applies disputed facts to such a statute, we review the factual findings for substantial evidence'"]; *People v. Salmorin* (2016) 1 Cal.App.5th 738, 743 [appellate court reviews factual findings by a superior court in a Proposition 47 proceeding for substantial evidence]; see generally *People v. Penunuri* (2018) 5 Cal.5th 126, 142 [describing deferential standard of review of the sufficiency of the evidence to support a criminal conviction]; *People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [same].)

14

### 3. *The Prosecution's Burden of Proof: Criminal Liability for Murder Beyond a Reasonable Doubt*

Section 1170.95, subdivision (d)(3), does not clearly identify the standard to be applied by the court to determine if the petitioner is ineligible for resentencing. Rodriguez suggests three different standards are possible. First, does the evidence establish beyond a reasonable doubt the petitioner was convicted of murder under a still-valid theory—the harmless error standard applicable when a trial court instructed a jury on two theories of guilt, one of which was legally correct and one legally incorrect, as articulated, for example, in *People v. Chiu* (2014) 59 Cal.4th 155, 167, and *People v. Guiton* (1993) 4 Cal.4th 1116, 1128-1129. Second, do the record of conviction and any additional evidence introduced at the hearing establish beyond a reasonable doubt the petitioner is guilty of murder under a still-valid theory—an independent factfinder or trial standard. Third, would the evidence permit a reasonable jury to find the petitioner guilty of murder with the requisite mental state beyond a reasonable doubt—essentially substantial evidence standard for appellate review (the appellate standard).

Rodriguez urges us to hold either the *Chiu/Guiton* harmless error standard or the independent factfinder/trial standard must be applied to determine ineligibility for resentencing under section 1170.95. We agree with the holding of the court of appeal in *Lopez*, *supra*, 56 Cal.App.5th 936 that the independent factfinder/trial standard, requiring a finding by the superior court beyond a reasonable doubt that the petitioner was criminally liable for murder under the amendments enacted by

15

Senate Bill 1437, should govern determinations of ineligibility at a subdivision (d)(3) hearing.[6]

a. *General principles of statutory interpretation*

"Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent.'" (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041.) "'"We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose."' [Citation.] 'If we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views.'" (*In re A.N.* (2020) 9 Cal.5th 343, 351-352; accord, *Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 293.)

---

[6] In his respondent's brief the Attorney General also agreed the superior court was required to find beyond a reasonable doubt that the petitioner was criminally liable for murder under the current Penal Code provisions. However, at oral argument the Attorney General withdrew that position and asserted a substantial evidence standard applied, albeit one that differed somewhat from that standard as recently articulated in *People v. Duke* (2020) 55 Cal.App.5th 113.

### b. *The* Chiu/Guiton *harmless error standard is inconsistent with the statutory language*

Rodriguez's argument in favor of the *Chiu/Guiton* harmless error standard is contrary to three related aspects of section 1170.95. First, the harmless error line of cases requires courts to inquire whether "there is a basis in the record to find that the verdict was based on a valid ground." (*People v. Chiu, supra*, 59 Cal.4th p. 167.) That backward looking evaluation is inconsistent with section 1170.95, subdivisions (a)(3) and (d)(3)'s explicit direction to the court to determine if the petitioner could now be convicted of murder under sections 188 and 189 as amended, not whether he or she was, in fact, convicted of murder under a still-valid theory. Second, subdivision (d)(3) permits both parties to present new or additional evidence at the hearing after issuance of the order to show cause. If the superior court's ineligibility ruling may be based on evidence not heard by the original trier of fact, the Legislature cannot have intended the court simply to evaluate the grounds on which the original verdict was reached. Finally, section 1170.95 is available to defendants convicted of murder following a plea in lieu of a trial. Given the limited record in many of those cases, it would be impossible to assess whether a still-valid ground for a murder conviction existed, let alone to determine beyond a reasonable doubt that the valid ground was the basis for the plea. Yet section 1170.95 contemplates the same procedure to determine ineligibility in plea cases as in cases in which the murder conviction was reached at trial.

c. *The appellate review standard is inconsistent with the Legislature's intent in permitting retroactive relief for individuals convicted under now-invalid theories of murder*

We similarly reject the third approach, the appellate review standard, which asks whether a reasonable jury could find the petitioner could be convicted of murder under a still-valid theory, and which Division One of this court adopted in *People v. Duke* (2020) 55 Cal.App.5th 113, 123-124 (*Duke*).

At the threshold, because section 1170.95, subdivision (d)(3), does not clearly identify the standard to be applied, we look to the Legislature's stated purpose in enacting Senate Bill 1437 to guide our interpretation of the statutory language. (See *People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141 ["""[a]s in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose"""]; *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332 ["[i]n interpreting a statute, our primary goal is to determine and give effect to the underlying purpose of the law"].)

As discussed, concerned about the disparity between individual culpability and punishment then existing under the natural and probable consequences doctrine and the felony murder rule, the Legislature with Senate Bill 1437 reformed aider and abettor liability in homicide cases to more equitably sentence both past and future offenders in relation to their own actions and subjective mentes reae. (See Stats. 2018, ch. 1015, § 1, subds. (f), (g).)[7] That legislative goal is best effectuated by

[7]    In September 2017, a year prior to enactment of Senate Bill 1437, the Legislature adopted Senate Concurrent Resolution

resentencing individuals convicted of first or second degree murder under the natural and probable consequences doctrine or the felony murder rule if the evidence, whether from the record of conviction alone or with new and additional evidence introduced at the subdivision (d)(3) hearing, fails to establish beyond a reasonable doubt they, in fact, acted during the crime with the now-required mental state.  To deny resentencing simply because a jury could have found that they may have acted with express malice would frustrate the legislation's purpose.

　　To be sure, section 1170.95, subdivision (a)(3), provides, as a condition to petitioning for resentencing relief, that "[t]he

---

No. 48 (2017-2018 Reg. Sess.) resolution chapter 175 (SCR 48), recognizing the need for statutory changes to more equitably sentence offenders in relation to their involvement in the criminal activity:  "[R]eform is needed in California to limit convictions and subsequent sentencing in both felony murder cases and aider and abettor matters prosecuted under [the] 'natural and probable consequences' doctrine so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences which are not commensurate with the culpability of the defendant."  SCR 48 also noted, "It can be cruel and unusual punishment to not assess individual liability for nonperpetrators of the fatal act or in nonhomicide matters the criminal charge resulting in prosecution and impute culpability for another's bad act, thereby imposing lengthy sentences that are disproportionate to the conduct in the underlying case." Following 28 "whereas" provisions, the Senate, with the Assembly concurring, resolved "[t]hat the Legislature recognizes the need for statutory changes to more equitably sentence offenders in accordance with their involvement in the crime."  (See generally *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1098, review granted Nov. 13, 2019, S258175.)

petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (See also § 1170.95, subd. (b)(1)(A) [petitioner must declare that "he or she is eligible for relief under this section based on the requirements of subdivision (a)"].) If the primary requirement for eligibility for resentencing is that the petitioner could not be convicted of murder, the *Duke* court reasoned, then to prove ineligibility the prosecution need only establish that the petitioner "*could* still have been convicted of murder under the new law." (*Duke*, *supra*, 55 Cal.App.5th at p. 123.)

This overly literal analysis is not compelled by the statute's language and is directly at odds with the Legislature's stated purpose in enacting Senate Bill 1437. Use of a conditional verb in section 1170.95, subdivision (a)(3), is a normal grammatical construct to express the hypothetical situation an inmate such as Rodriguez faces when filing the petition—what would happen today if he or she were tried under the new provisions of the Penal Code? (See, e.g., GrammarlyBlog, *Conditional Verbs* <https://www.grammarly.com/blog/conditional-verbs/> [as of December 7, 2020], archived at https://perma.cc/RF67-BD3V> ["[c]onditional verbs are us ed to create conditional sentences, which express hypothetical or unlikely situations"].) But once a prima facie case of eligibility has been made and an order to show cause issued, the prosecution's burden is neither conditional nor hypothetical. Under subdivision (d)(3) the prosecutor must prove "the petitioner is ineligible for resentencing," not that he or she might be or could be ineligible. (See *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 280 [interpretation of a statute should "follow[ ] the grammatical structure and logic of the

20

statutory language taken as a whole"]; *People v. Valenti* (2016)
243 Cal.App.4th 1140, 1170 ["'[w]ords and phrases in a statute
are construed according to the rules of grammar and common
usage'"].)

Moreover, the prosecutor must prove ineligibility beyond a
reasonable doubt, which is not only the standard of proof
considered by the independent factfinder in a criminal trial but
also, as the Supreme Court held in *People v. Frierson* (2017)
4 Cal.5th 225 less than two months before the introduction of
Senate Bill 1437, the burden a prosecutor must carry in proving
ineligibility for resentencing under Proposition 36, the
Three Strikes Reform Act of 2012.[8]  It is unlikely the Legislature

---

[8]     Under Proposition 36 an inmate who has been sentenced as
a third strike offender for a nonserious, nonviolent felony may
petition for resentencing as a second strike offender.  (§ 1170.126,
subds. (a), (b).)  Upon receiving such a petition the trial court
"shall determine whether the petitioner satisfies the criteria"
identified in the statute.  (§ 1170.126, subd. (f).)  If the criteria
are met, section 1170.126, subdivision (f), continues, "[T]he
petitioner shall be resentenced . . . unless the court, in its
discretion, determines that resentencing the petitioner would
pose an unreasonable risk of danger to public safety."  In *People
v. Frierson*, *supra*, 4 Cal.5th 225 the Supreme Court held, once
the inmate makes an initial showing of eligibility for
resentencing, "[T]he prosecution bears the burden of proving that
one of the ineligibility criteria applies. . . .  Placing the burden of
proving ineligibility on the prosecution is consistent with the
recall statute's statement that it should apply to one 'whose
sentence under this act would not have been an indeterminate
life sentence.'"  (*Id*. at p. 234.)  The Court additionally held proof
of the petitioner's ineligibility beyond a reasonable doubt was
required (*id*. at p. 230), and then noted, "[T]he trial court's
discretion to deny resentencing to a defendant who poses an

would have selected that language if it had intended only an appellate-type review of the sufficiency of the evidence of the petitioner's guilt on a still-viable theory, rather than requiring the prosecutor to actually establish the petitioner's guilt under the newly amended statutes.

The improbability of such a legislative intent is underscored by subdivision (d)(3)'s provision authorizing both parties to introduce new or additional evidence at the hearing to determine whether the petitioner is ineligible for resentencing. How is the superior court to evaluate that additional evidence if not as an independent factfinder? It would be pointless for the court's role in this situation simply to be deciding whether a jury *could* credit a new witness's testimony and thus *could* conclude the petitioner had acted with express malice.[9]

Indeed, the understanding it would be the prosecution's burden to prove to an independent factfinder that the petitioner was guilty of murder was a primary concern of the California District Attorneys Association (Association), which opposed Senate Bill 1437. As set forth in identical language in the Senate

---

unreasonable danger to the public acts as a safeguard in cases where the record does not establish ineligibility criteria beyond a reasonable doubt." (*Id.* at p. 240.)

[9] Unless it is physically impossible or inherently improbable, the testimony of any witness may be believed and is sufficient to support a conviction. (E.g., *People v. Ghobrial* (2018) 5 Cal.5th 250, 281; *People v. Young* (2005) 34 Cal.4th 1149, 1181.) As such, any new witness for the People would likely justify a finding that the petitioner could be liable for murder under the amended statutes. In this context, moreover, it is unclear what additional meaning there would be to require the court to find beyond a reasonable doubt that a jury could have believed the witness.

Committee on Public Safety's initial report on the legislation and again in the Assembly Committee on Public Safety's report on an amended version of the bill, the Association complained, "[B]y placing the burden on the prosecution to prove beyond a reasonable doubt that petitioners do not qualify for resentencing, this bill will require the litigation of facts previously not litigated in the original case, particularly in cases that resolved through a plea. It is unclear from this bill whether the determination of those facts will be conducted by the resentencing judge or will necessitate a jury—which has significant procedural and constitutional implications as well as significant costs." (Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) Feb. 16, 2018, p. 10; Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, p. 8.)

The Association's fear a jury might be required was unfounded. (See *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156-1157 [no Sixth Amendment right to a jury trial in proceedings under section 1170.95].) Its interpretation of the nature of the factfinding hearing to determine ineligibility, however, was correct. (See Couzens, Accomplice Liability for Murder (SB 1437) (April 2019), at p. 36 ["[i]t is the burden of the prosecutor to show, beyond a reasonable doubt, that the petitioner is guilty under the law effective January 1, 2019"].)

The court of appeal in *Lopez, supra*, 56 Cal.App.5th 936 reached the same conclusion as we do, using a slightly different analysis. The question, the *Lopez* court posited, is "how confident must the trial court be in the state's ability to prove the petitioner's guilt of murder under current law in order to find petitioner ineligible for relief. Must the prosecutor persuade the

23

trial court that the state theoretically has the requisite ability because there is substantial evidence from which a reasonable trier of fact could convict?  Or must the prosecutor persuade the trial court beyond a reasonable doubt that the state has the requisite ability by proving beyond a reasonable doubt each element of murder?  In short, what is the standard of proof?" (*Id.* at p. 949.)  *Lopez* held the statute itself provides the answer: "Section 1170.95, subdivision (d)(3) expressly states that the beyond a reasonable doubt standard of proof applies." (*Ibid.*)  Accordingly, *Lopez* continued, "we construe the statute as requiring the prosecutor to prove beyond a reasonable doubt each element of first or second degree murder under current law in order to establish ineligibility based on the third condition." (*Ibid.*)

In sum, we agree with Rodriguez and the *Lopez* court of appeal that it is the court's responsibility to act as independent factfinder and determine whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189 and is thus ineligible for resentencing under section 1170.95, subdivision (d)(3).

> 4. *The Superior Court Applied an Incorrect Standard in Finding Rodriguez Ineligible for Resentencing*

Rather than find beyond a reasonable doubt that Rodriguez had directly aided and abetted the murder of Lopez, the superior court here determined only that "there is sufficient evidence in the record to support an express malice murder theory." Accordingly, the matter must be remanded for a new hearing for

the court to evaluate, using the proper standard of proof, whether Rodriguez is ineligible for resentencing.[10]

Although in his brief the Attorney General agreed the prosecution's burden was to prove beyond a reasonable doubt that Rodriguez was criminally liable for murder under the amendments enacted by Senate Bill 1437, citing two statements from the November 27, 2019 hearing, he argued the superior court correctly applied this standard of proof. We do not share the Attorney General's generous interpretation of the court's language.

As the Attorney General points out, the court observed that the issue to be decided was whether a theory of liability existed other than natural and probable consequences "that could still support beyond a reasonable doubt" a conviction for second degree murder, and subsequently stated it was required to review the record to determine "whether or not there is evidence in the

---

[10] Rodriguez argues on appeal the superior court's consideration of Delgado's explanation during a police interview of the motive for shooting Lopez, admitted at trial only as to Delgado, violated his Sixth Amendment right to confrontation and, in addition, was inadmissible hearsay. He also contends, if the issue was forfeited because his counsel did not object to the evidence at the subdivision (d)(3) hearing, as the Attorney General argues, he received constitutionally ineffective assistance of counsel. The Attorney General responds that there is no constitutional right to confrontation at a hearing held pursuant to section 1170.95, the evidence was otherwise admissible, and any error in considering Delgado's statement was harmless. Because Rodriguez did not object and the superior court therefore did not have an opportunity to rule on this evidentiary issue, it should be addressed in the first instance on remand.

record beyond a reasonable doubt that could support a murder conviction." But both of those formulations of the standard used the phrase "could support"—the appellate standard of review—not "does support beyond a reasonable doubt" or equivalent language, which would indicate the court had actually found the evidence established Rodriguez was guilty of murder as a direct aider and abettor. None of the court's other comments suggests it understood its obligation to make a finding of guilt, not simply a determination that a trier of fact, applying the beyond a reasonable doubt standard, could make such a finding. To the contrary, the court's determination that Rodriguez's motive to commit murder was "supported by substantial evidence" and its statement toward the end of the hearing that Rodriguez "is entitled to be resentenced if, in fact, there is no other evidence in the record that could support any alternative theory," as well as its ultimate ruling, reveal the court's application of the incorrect standard.

Because the superior court applied an incorrect standard of proof, its order denying Rodriguez's petition for resentencing must be reversed and the matter remanded for a new hearing. Whether the record establishes Rodriguez's ineligibility for resentencing beyond a reasonable doubt is to be decided in the first instance by the superior court acting as factfinder and using the proper standard of proof.

## DISPOSITION

The order denying Rodriguez's petition for resentencing is reversed, and the matter remanded for a new evidentiary hearing applying the correct standard of proof as set forth in this opinion.

PERLUSS, P. J.

We concur:

SEGAL, J.

DILLON, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.