Filed 12/9/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B307522 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA055347) |
| v. | |
| EDWARD STROTHER, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, William C. Ryan, Judge. Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

In 2003 appellant Edward Strother was convicted of second degree burglary (Pen. Code, § 459)[1] and theft of access card information (§ 484e, subd. (d)). Under the Three Strikes law, he was sentenced to two consecutive terms of 25 years to life in prison. In 2013, appellant filed a petition to recall his entire sentence pursuant to Proposition 36 (§ 1170.126), and in 2014 he filed a petition to recall his sentence for theft of access card information pursuant to Proposition 47 (§ 1170.18). The trial court issued an order to show cause why relief should not be granted for both petitions and in February 2020, found appellant eligible for relief under both propositions. Following a July 2020 hearing on both petitions, the trial court found appellant posed an unreasonable risk of danger to public safety and was not suitable for resentencing. The trial court denied both petitions.

Appellant appeals, contending the trial court abused its discretion in finding he posed an unreasonable risk of committing one of the "super strikes" identified in Proposition 47 (§ 1170.18) because the trial court 1) failed to consider that his two prior convictions involving violence and firearm use occurred almost 30 years ago with no evidence he was the shooter; 2) failed to consider his prison fighting from 2016 through 2019 was the result of his gang renunciation in 2016; and 3) erroneously found that his conflict resolution and anger management programming and parole plans were inadequate. He makes essentially the same argument about the trial court's denial of his Proposition 36 petition. We affirm the trial court's order.

---

[1] Undesignated statutory references are to the Penal Code.

# BACKGROUND

Appellant's juvenile record began in 1979, when he was 14 years old, with a sustained petition for robbery with the use of a deadly weapon, a knife. In 1980, a petition was sustained against him for attempting to take a vehicle without the owner's consent; a second petition was sustained against him for escaping from camp.[2] He was committed to the California Youth Authority (CYA) and released on parole in 1981. In 1982, a petition was sustained against appellant for robbery and attempted robbery with the use of a firearm; he was still on parole at the time. Appellant was committed to the CYA and released on parole in January 1985.

In July 1985, appellant was convicted of assault with a firearm as an adult and sentenced to two years in prison; the victim was attempting to escort his sister away from a group of drug dealers when appellant and another man shot at but did not hit the victim. In 1986, appellant was convicted of possession of a controlled substance in prison.[3] In 1988, appellant violated parole and was returned to prison. In 1989 appellant again violated parole and was returned to prison.

---

[2] Appellant contends the 1979 robberies and the attempted vehicle taking are not shown on the CLETS printout. As respondent points out, both are shown in a subsequent Probation Officer's Report filed in Alameda County in 1985.

[3] Appellant complains the prosecutor's summary of crimes listed the assault and drug possession multiple times. The trial court did not make the same mistake.

3

In 1990 and 1991, appellant was arrested five times (for giving false information to a police officer; possession of a firearm silencer; use of a controlled substance; attempted murder; and driving a vehicle without the owner's consent), but, as the trial court noted, was not convicted of any of those offenses.[4]

In 1991, appellant was convicted of residential burglary with personal gun use and assault with a firearm on a police officer. In 1992, appellant was charged with murder but pled guilty or no contest to voluntary manslaughter.

Appellant was convicted of the commitment offenses of second degree burglary and theft of access card information in 2003. He entered a Fry's Electronics store and attempted to purchase a computer using a credit card. The cashier discovered a problem with the credit card, and appellant fled, leaving the computer and credit card at the store, along with his driver's license.

From May 2004 through October 2019, appellant was found guilty of 34 serious rules violations documented on a California Department of Corrections and Rehabilitation (CDCR) Form 115 (RVR). Twenty-seven of the RVRs were received after appellant filed his Proposition 36 petition. Seventeen came after appellant renounced his association with the KUMI 415 gang in November

---

[4] The trial court admitted this arrest evidence as part of the third factor identified by both propositions: any evidence the trial court deems relevant. There is no indication it played any significant role in the trial court's ultimate decision, which focused on appellant's 1991 and 1992 convictions and his parole violations.

4

2016. The majority involved violence. None of the acts of violence were against a prison staff member and none involved the reported use of a weapon. No RVR includes a report that appellant caused an injury requiring medical attention.

Appellant's CDCR classification score was 174 in April 2020, up from 58 shortly after he was admitted to prison. The higher the score, the more security controls the prisoner needs. In contrast, his static risk score (CSRA) used to predict recidivism was 1-low.

Appellant's post-release plans involved the Partnership for Re-Entry Program (PREP) which would provide transitional housing, vocational classes, an AA support group, assistance in securing employment, and other support. Appellant also had the opportunity to enter residential treatment for substance abuse, with follow-on sober living housing. Appellant's brother, who resided in northern California, stated he would offer appellant a job which appellant could perform from home. Appellant's wife, who also lived in northern California, supported his release.

Following a hearing, the trial court issued a Memorandum of Decision denying both petitions.

As to the Proposition 47 petition, the trial court found: "Petitioner has an extensive criminal record beginning in 1979, when Petitioner was only 14 years old . . . . Petitioner's history shows a tendency to revert back to crime as soon as he is released from custody. . . . Petitioner's criminal history includes significant violence and weapons, including a conviction for assault with a firearm on a police officer in 1991, where Petitioner shot at a police officer and his vehicle, as well as a

5

conviction for voluntary manslaughter in 1992, where Petitioner executed the victim by shooting him in the back of the head. While a history of recidivism alone is an insufficient basis for a court's finding that a petitioner poses an unreasonable risk of danger to public safety, the multiplicity of prior convictions and the failure to comply with conditions of intervening periods of probation or parole give rise to a valid concern about a danger to public safety. [Citation.] In order for this concern to support a finding of unsuitability for resentencing, however, the concern must be presently relevant and cannot, absent some additional evidence, stand alone to support a finding that a petitioner currently poses an unreasonable risk to public safety. [Citations.]"

"Therefore, the multiplicity of Petitioner's prior convictions and his inability to refrain from re-offending while in the community constitute present and relevant concerns only if other evidence in the record provides a nexus between Petitioner's criminal past and current dangerousness. [Citation.] While Petitioner's criminal history may be remote in time, there continues to be a nexus between his previous criminal history and his current risk of danger to public safety because of his significant disciplinary history, elevated classification score, and insufficient meaningful rehabilitative programming."

As the trial court then explained: "The record indicates that Petitioner has engaged in significant institutional misconduct while incarcerated. . . . Most notably is the fact that 26 of [his 34] RVRs were incurred *after* the filing of his Proposition 36 petition for resentencing and 16 [of the 26] were incurred *after* the filing

6

of his Proposition 47 petition for resentencing, a time when the court would expect Petitioner to be on his best behavior. The majority of these 26 RVRs involved serious misconduct, including 12 RVRs for fighting, three RVRs for battery, five RVRs for controlled substances including heroin and two RVRs for cell phones. Petitioner claims to have been the victim of batteries and that he had expressed safety concerns to prison staff, stating that he was 'tired of prison politics.' [Citation.] This explanation, however, hardly accounts for all of Petitioner's RVRs involving violence, many of which indicated that he was the aggressor, including one incident where he assaulted a wheelchair-bound inmate." The trial court noted that appellant "has only taken a single conflict resolution course in 2014 and has failed to engage in any anger management programming despite the pattern of aggressive and violent conduct in his criminal and disciplinary history."

The court summarized its finding: "In other words, Petitioner's RVRs containing significant violence and lack of rehabilitative programming, couple with his extensive criminal history, show that Petitioner is likely to commit a 'super strike' if resentenced. (§ 1170.18, subds. (c) & (i).)" The court added that appellant's current classification score was 174, which was high, and had increased from his initial score of 58, "which reflects that Petitioner has engaged in serious misconduct for a consistent amount of time." The court also added that it recognized that appellant's current "CSRA score of 1-low and his advanced age of 55 would typically be factors indicating that he no longer poses an unreasonable risk of danger to society . . . . [Citation.]

7

Petitioner's CSRA score and these statistics, however, are contradicted by Petitioner's disciplinary record, which shows numerous incidents involving violence after the age of 50. This amplifies the court's concern that resentencing Petitioner would pose an unreasonable risk of danger to public safety. [¶] Finally, the court finds Petitioner's post-release plans . . . tenuous at best."

Turning to appellant's Proposition 36 petition, the court stated: "Considering relevant factors and [the] same evidence discussed above in connection with Petitioner's Proposition 47 petition for resentencing, the court finds that the evidence presented in this case shows a Petitioner who has continually committed crimes despite severe repercussions, whose aggressive behavior continued and escalated while he was in custody, and who has failed to make efforts toward meaningful rehabilitation while in prison. . . . Petitioner, at this time, poses an unreasonable risk of danger to public safety if resentenced under Proposition 36."

## DISCUSSION

Proposition 36 applies to any inmate serving a life sentence under the Three Strikes law for a non-serious, non-violent felony commitment offense. Once a petitioner shows that his commitment offense was a non-serious, non-violent felony, "the petitioner shall be resentenced . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126 subd. (f).) Section 1170.126 provides that the court may consider "(1) The petitioner's criminal conviction history,

8

including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g)(1)–(3).)

Proposition 47 applies to any inmate serving a felony sentence for certain non-serious, non-violent offenses; the law provides that such offenses shall be reduced to misdemeanors "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§1170.18, subd. (b).) The law directs the court to consider the same categories of evidence as Proposition 36 does: "(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes. [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated. [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§1170.18, subd. (b)(1)–(3).) Proposition 47, however, states that an " 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667," often called super strikes. (§1170.18, subd. (c).)

9

We review a trial court's decision under both sections 1170.126 and 1170.18 for abuse of discretion. "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377 (*Carmony*).)

"[A]ll discretionary authority is contextual." (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 978.) Thus, we cannot determine whether a trial court has acted irrationally or arbitrarily without considering the legal principles and policies that should have guided the court's actions. (See *Carmony, supra*, 33 Cal.4th at p. 377.) Further, " '[t]he facts upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence . . . and are themselves subject to [appellate] review for substantial evidence.' [Citations.]" (*People v. Frierson* (2017) 4 Cal.5th 225, 239.)

*A.    Proposition 47 Petition*

Appellant contends the trial court failed to establish a nexus between his current circumstances and the court's conclusion he poses an unreasonable risk of committing a super strike, and so abused its discretion in denying his petition for resentencing.  More specifically, appellant contends the trial court abused its discretion in 1) finding that his prison rules violations alone showed he posed an unreasonable risk of committing a super strike; 2) finding that his 30-year-old criminal convictions for assaulting a police officer with a firearm and voluntary manslaughter were probative of his current dangerousness; 3) relying on his prison misconduct as a nexus to his past convictions without considering the details of and reasons for his prison misconduct; 4) finding that his lack of rehabilitative programming predicted he would commit a super strike; and 5) finding his rehabilitative plans inadequate.

1.    Criminal convictions

Appellant contends that his criminal history does not prove he currently poses a risk of committing a super strike.  He claims his 1991 conviction for assaulting a police officer with a firearm does not establish that he was an actual shooter, and so does not show he poses an unreasonable risk of committing the super strike of assaulting a police officer with a machine gun.  He also claims that his plea bargain to the 1992 conviction for voluntary manslaughter shows the District Attorney must not have had sufficient evidence to prove that he drove the victim around in the trunk of a car and then killed him in an execution style shooting.  Thus, he concludes, this conviction does not show he

11

poses an unreasonable risk of committing the super strikes of murder or attempted murder.[5]

Appellant's conviction for assaulting a police officer was affirmed on appeal, and the facts on that appeal show that appellant was holding an "uzi-style" firearm when he got into the cab of a truck with two other men, one of whom was also armed. Immediately before the shooting began, the rear window of the truck cab was opened. The officer in the patrol car behind the truck saw two muzzle flashes. A nearby officer stated he saw muzzle flashes coming from two different points in the truck: one on the driver's side and one on the passenger's side. The truck sped away, crashing on the freeway. Of the four men arrested nearby who were connected to the truck, only appellant and one other man had gunshot residue on their hands. Thus, it is reasonable to infer appellant was one of the shooters.

As for the voluntary manslaughter conviction, there was evidence at the preliminary hearing that the victim was put into the trunk of a car with a pillowcase over his head. It was

[5] In his reply brief, appellant contends for the first that the trial court failed to consider that his criminal offenses before 1990 were committed when he was under the age of 26, when he still had the hallmarks of youth. Although we do not consider arguments made for the first time in a reply brief, we note the trial court clearly focused on the more serious acts appellant committed after he turned 26: his 1991 conviction for assaulting a police officer, his 1992 conviction of voluntary manslaughter, and his multiple parole violations between those offenses and the current commitment offense. The trial court also clearly distinguished between appellant's offenses as a juvenile and his convictions as an adult.

undisputed that the victim was later found on the grounds of a school with two close-contact gunshot wounds to the back of his head.  A friend told police appellant admitted to taking the victim to the school, and because the victim knew too much about appellant's criminal activities, "executed him."  There was evidence from another friend that appellant believed the victim was a drug dealer, intended to rob him, accidentally shot him, and was not sure if the victim died.  While these inconsistent accounts of appellant's incriminating statements may have prompted the prosecutor to offer a plea deal, both accounts show appellant was involved in a crime of great violence, whether he shot, or intended to shoot, the victim.[6]

We cannot agree with appellant that these convictions do not support a finding (when considered with his intervening conduct) that he poses an unreasonable risk of committing a super strike.  Appellant has twice gone right to the edge of committing a super strike.  Shooting at a police officer with a semi-automatic firearm is as close as one can get to committing the super strike of assaulting a police officer with a machine gun without actually committing the super strike.  Similarly, voluntary manslaughter where the victim presented a threat to one's continued criminal activity is as close to committing the super strike of felony murder or the super strike of first degree

---

[6]    Even without the shooting, kidnapping for robbery would be a super strike, as it is punishable by life in prison.  (§ 209, subd. (a).)  Killing the victim during the course of a robbery or kidnapping would be felony murder regardless of the shooter's intent.  (§ 189, subd. (a).)

premeditated murder as one can get without actually committing the super strike. Any farther and he would not be eligible for resentencing at all. (See *People v. Hall* (2016) 247 Cal.App.4th 1255, 1266 [Proposition 47 expressly excludes offenders who have committed a super strike from resentencing and so trial court's discretion to deny petition not limited to offenders who have already committed a super strike].)

The trial court explicitly recognized that these criminal convictions standing alone were not sufficient to show that appellant posed a current risk of committing a super strike, but ultimately found that these convictions, considered with several other factors, did demonstrate such a risk. The trial court did not abuse its discretion.

2. RVRs alone

Appellant has misunderstood the trial court's remark about the effect of his prison rules violations standing alone. The court stated, correctly: "Petitioner's recent disciplinary history reflects a pattern of violent and aggressive conduct, evidencing his inability or unwillingness to comply with rules, respect authority, and refrain from fighting, 15 years into his current incarceration period. Regardless of the remoteness of petitioner's commitment offense, serious rules violations in prison constitute powerful evidence of an inmate's current willingness to engage in serious rule-breaking behavior and are probative of recidivist tendencies and the danger to public safety. (*In re Rozzo* (2009) 172 Cal.App.4th 40, 60; *In re Bettancourt* (2007) 156 Cal.App.4th 780, 805.)" Concluding that evidence is "probative of . . . danger to public safety" is not equivalent to concluding that the evidence

14

alone demonstrated appellant poses a risk of committing a super strike, as the trial court makes clear in the following paragraph. There, the trial court sums up its finding: "In other words, Petitioner's RVRs containing significant violence and lack of rehabilitative programming, coupled with his extensive criminal history, show that Petitioner is likely to commit a 'super strike' if resentenced.  (§ 1170.18, subds. (c) & (i).)"

3.     The Probative Value of the RVRs as a Nexus

Appellant next contends that his RVRs do not "transform" his prior convictions into evidence that he currently poses a risk of committing a super strike because the RVRs do not involve assaults on prison staff or use of a weapon and did not result in reported injuries.  He further contends that his RVRs for fighting showed that he was forced to fight in order to survive.  He contends his environment became unsafe in 2016, after he renounced his membership in KUMI 415, and that it is reasonable to infer the fights were either the result of the gang withdrawing its protection of him, or of the gang targeting him for retaliation.  He contends the trial court failed to evaluate his RVRs through the "lens" of his gang renunciation and therefore failed to consider his overall circumstances.

We find it insignificant that the RVRs did not involve assaults on prison staff.  There can be many motives for an individual to attack a police officer.  Appellant's prior conviction suggests he fired at the patrol car because he was attempting to escape from the police; assaulting prison staff to escape from them would have been futile in that regard.  Similarly, that

15

appellant did not use weapons in prison has limited significance at best, since weapons are more difficult to acquire and retain inside prison than outside of it, particularly firearms. As far as lack of reported injuries is concerned, the RVRs all involved fights which were observed and stopped by prison staff fairly quickly after they began, reducing the opportunity for appellant to inflict significant injuries.

Turning to appellant's renunciation of KUMI 415 membership, appellant's counsel argued in the trial court that he had not been involved with KUMI 415 during his most recent incarceration, and that even his most recent RVRs for fighting did not have a gang nexus. In appellant's September 2018 Proposition 47 reply brief, appellant's counsel stated: "There is no evidence in petitioner's record that he has been involved with the 415 KUMI during his current prison term. Primarily, none of petitioner's write-ups denote that petitioner's behavior was in any way related to a Security Threat Group."[7] In appellant's July 2020 supplemental reply brief for both petitions, his counsel contended that "none" of the 2018 and 2019 RVRs for fighting "involved [a gang] nexus." Counsel elaborated: "[T]hroughout petitioner's 16-years of incarceration, there has never once been a report that he was actively involved with the KUMI 415. This was further confirmed by the fact that none of petitioner's RVRs contained [a gang] nexus, including the most recent fights and

---

[7] Counsel pointed out that the most recent evidence of petitioner's membership in KUMI 415 came from a prior incarceration dated in 2000, which in turn was based on information from 1994.

batteries."[8]  At the July 2020 hearing, counsel noted that appellant "had signed a renunciation of his association with" KUMI 415, and was placed in the sensitive needs yard at the end of 2016.  Counsel noted that most of his RVRs occurred in 2018 and implied they occurred after appellant was removed from that yard.[9]  Counsel did not suggest that the 2018 fights were related to his gang renunciation.  She also did not suggest that the fights were due to KUMI 415 withdrawing its protection of appellant after his renunciation.  We cannot find the trial court abused its discretion by failing to consider a theory which appellant's counsel effectively argued should be not considered.

Further, the record does not show that, on balance, appellant was the victim in the majority of the fights which prompted the RVRs, or that he was "forced" to fight in order to survive.  Appellant has identified two instances where the fighting involved two inmates on his enemies list attacking him together:  September 11 and 15, 2016.  In another instance, two inmates were observed attacking appellant unprovoked in the dining hall on September 28, 2019.  This accounts for a total of 3 RVRs.  (Appellant also reported he was attacked by his

---

[8]     While the term "nexus" may have a specific definition in prison disciplinary matters which is not discussed in the briefing, it remains true that appellant's counsel made no attempt to argue that appellant's fights were the result of his gang renunciation.

[9]     We see no explanation in the briefing for appellant's removal, or any indication of when precisely it occurred.

cellmate on April 1, 2018, although this does not appear to have resulted in a RVR for appellant.)

In contrast, the record does not show appellant as a victim in 10 other RVRs. In five instances, appellant was clearly the aggressor: 1) July 4, 2018 [appellant walked up to an inmate leaving the medical facility and began hitting him]; 2) July 6, 2018 [appellant struck a seated inmate receiving care in medical facility]; 3) July 30, 2018 [appellant left shower and struck porter without provocation]; 4) August 16, 2018 [appellant initiated a battery on another inmate without provocation]; and 5) October 4, 2018 [appellant walked up to wheelchair-bound inmate and began hitting him]. It also appears appellant was the aggressor in a March 13, 2018 fight [staff heard sound of stool being knocked over, looked up and saw appellant standing over and striking an inmate lying on the ground]. In four other instances, it was unclear who started the fighting, but appellant did not claim to be the victim: 1) April 1, 2018; 2) August 4, 2018; 3) October 3, 2018; and 4) May 9, 2019.

The trial court did not abuse its discretion in treating appellant's RVRs from 2016 through 2019 as evidence that he currently posed an unreasonable risk of committing a super strike. As the trial court indicated, it is particularly troubling that these incidents occurred after the passage of Proposition 36 and Proposition 47 "when one would expect eligible inmates to be on their best behavior." It is reasonable to view appellant's continued fighting at such a time as evidence that he was unable to control his violent tendencies or to resolve conflicts peacefully. Considered together with appellant's pre-incarceration use of

firearms and a knife, the RVRs are evidence indicating appellant would be equally unable to control his violent tendencies outside prison and would be likely to resort to the use of a firearm to resolve disputes or solve problems, as he has done in the past.

4. Rehabilitative Programming

Appellant contends the trial court erred in faulting him for taking only one conflict resolution course and no anger management courses in prison. He points to the trial court's statement that "If Petitioner is unable to refrain from such conduct and to abide by the rules and regulations of the CDCR, it is unlikely that he will be able to do so once released into the free community" as an indication the trial court misunderstood the high standard required for an unsuitability finding under Proposition 47. He suggests that the court found only that appellant posed an unreasonable risk of committing some other offense.

As we pointed out in section 2 above, later in the same paragraph, the trial court summed up its finding: "In other words, Petitioner's RVRs containing significant violence and lack of rehabilitative programming, coupled with his extensive criminal history, show that Petitioner is likely to commit a 'super strike' if resentenced. (§ 1170.18, subds. (c) & (i).)" As we pointed out in section 3 above, firearms are not readily available in prison, but appellant had resorted to the use of firearms pre-incarceration to resolve problems. It would be reasonable to infer that appellant's lack of conflict resolution and anger management programming makes it particularly likely he will resort to the use

19

of firearms once back in the community where they are readily obtainable.

     5.     Post-Release Plans

Appellant contends that by finding his parole plans "tenuous at best," the trial court neglected its duty to determine if the plans were realistic or if any perceived deficiencies could be addressed with parole conditions. The trial court accurately noted a disconnect between the goals of the PREP/Clear Skies program, which agreed to support appellant "until he secures a job and affirms him in his return to society in the community of Los Angeles" and the fact that appellant's "entire support system" and best job prospect were in northern California. The court noted appellant had not indicated what support he had in southern California.

Appellant has not addressed this disconnect on appeal, but simply assumes he could relocate to northern California at some point after release. It is not clear this would be such a simple matter. In any event, however, appellant's parole plan was the last factor discussed by the court in its memorandum of decision, and does not appear to have played a significant role in the court's denial of the petition. Specifically, the trial court mentioned the tenuous nature of the parole plans after concluding that appellant posed an unreasonable risk of committing a super strike. Thus, even if appellant's parole plans were adequate, we see no reasonable probability or possibility that the trial court would have granted appellant's petition and resentenced him.

B.    Proposition 36

In ruling on the Proposition 36 petition, the trial court considered the same evidence presented in connection with appellant's Proposition 47 petition.  The list of factors for the court to consider in deciding both petitions is the same. (§§ 1170.126, subd. (g)(1)–(3); 1170.18 subd. (b) (1)–(3).)  The primary difference between the two resentencing provisions is that Proposition 36 effectively sets a lower standard of dangerousness than does Proposition 47.

Appellant expressly relies on his arguments concerning the trial court's Proposition 47 ruling to show that the trial court abused its discretion in denying his Proposition 36 petition.  He states: "Those same arguments show the flaws in the trial court's analysis under Proposition 36."  We see no abuse of discretion in the trial court's ruling on the Proposition 36 ruling for the same reasons we found no abuse of discretion in the trial court's Proposition 47 ruling.

C.    Federal Due Process

Appellant contends, without elaboration, that the trial court's "improper findings violated state statutory law, and appellant's constitutional due process rights to a fair trial."  We have found that the trial court's findings were proper under California law.  Appellant has not explained how findings that are proper under state law would violate his federal constitutional right to due process.  Accordingly, we reject his claim.

21

DISPOSITION

The orders are affirmed.

**CERTIFIED FOR PUBLICATION**


STRATTON, J.

We concur:



GRIMES, Acting P. J.



WILEY, J.