Filed 1/4/22  P. v. Peterson CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).   This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STANLEY FITZGERALD PETERSON,<br><br>Defendant and Appellant. | B310533<br><br>Los Angeles County<br>Super. Ct. No. LA041734 |

APPEAL from an order of the Superior Court of Los Angeles County.  William C. Ryan, Judge.  Affirmed.

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven E. Mercer and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

A court convicted Stanley Fitzgerald Peterson of assaulting his disabled son and sentenced him to 25 years to life as a third strike offender. Peterson subsequently filed a petition for resentencing under Proposition 36, Penal Code section 1170.126.[1] The court denied the petition after finding Peterson is ineligible for relief because he intended to cause great bodily injury to his son. On appeal, Peterson argues there is insufficient evidence showing his intent. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. ***The Commitment Offense***

In February 2003, Peterson was charged with assaulting his son, Eddie Peterson,[2] by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)). Peterson waived his right to a jury trial, and the court conducted a bench trial.

At trial, the prosecution presented evidence that 26-year-old Eddie has a bone disorder called achondroplasia, which causes him to be short and experience back pain. Eddie was three feet four inches tall, weighed 80 pounds, and was legally blind. Peterson was five feet ten inches tall and weighed around 150 pounds.

On September 29, 2002, Peterson and Eddie had a heated argument in their apartment. Eddie's girlfriend, Johnetta Duckworth, and their newborn baby were also in the apartment.

Eddie was holding the baby in his arms when Peterson ran across the room and kicked him in the ribs. The force from the kick knocked Eddie back, and his head hit a counter.

---

[1] Future statutory references are to the Penal Code.

[2] We refer to Eddie Peterson by his first name for the sake of clarity. We mean no disrespect.

Eddie told Duckworth they needed to leave the apartment, and he walked past Peterson into a hallway while still holding the baby. Peterson followed Eddie as they continued to argue. Peterson told Eddie, "You're a piece of shit. I don't know how you [are] my child." He grabbed Eddie by the hair on either side of his head and repeatedly "ramm[ed]" Eddie's head into the wall, saying he was going to knock some sense into him.

Eddie eventually passed the baby to Duckworth. Peterson grabbed Eddie's throat with his thumb and index finger. He squeezed his fingers together, as if trying to break Eddie's esophagus. Peterson then got on top of Eddie, who was face down on the ground. He put his hand around the back of Eddie's neck and forced his head against the floor. Eddie tried to get up, but Peterson kept pushing him to the ground.

At some point Peterson and Eddie stood up and separated. Peterson calmed down and apologized to Eddie. Eddie believed Peterson could have "d[one] more than what he did."

Eddie and Duckworth left the apartment with their baby, and Duckworth called the police. Blood was coming out of Eddie's ear, his ribs hurt, and he had a bruise on the side of his face and scratches on his neck. When police and paramedics arrived about an hour later, Eddie was still bleeding from his ear. An ambulance took him to a hospital. A doctor testified that bleeding from the ear can be caused by a skull fracture or an injury just short of a fracture that nonetheless damages the structures enough to cause bleeding.

The court found Peterson guilty of violating section 245, subdivision (a)(1). The court further found he had prior convictions for voluntary manslaughter (§ 192, subd. (a)) and terrorist threats (§ 422), both of which qualified as strikes

for purposes of the Three Strikes law. Accordingly, the court sentenced Peterson to 25 years to life as a third strike offender. Peterson appealed, and this court affirmed the judgment. (See *People v. Peterson* (July 29, 2004, B169151) [nonpub. opn.].)

## 2. *Petition for Resentencing*

In 2013, Peterson filed a petition for resentencing under Proposition 36, section 1170.126. The court issued an order to show cause. In response, the District Attorney filed an opposition arguing Peterson is ineligible for resentencing because he intended to cause great bodily injury to Eddie during the assault. The District Attorney alternatively argued Peterson was unsuitable for resentencing because he posed an unreasonable risk of danger to public safety. In a reply to the opposition, Peterson maintained the evidence at trial showed he did not intend to cause great bodily injury to Eddie. He attached to the reply a reporter's transcript of the trial.

The court conducted a hearing on October 27, 2020, to consider the eligibility issue. The court subsequently issued a memorandum of decision in which it found, beyond a reasonable doubt, that Peterson intended to cause great bodily injury to Eddie. The court explained: "Here, the testimony of the victims [at trial] and the extent of Eddie's severe injuries shows that the petitioner did in fact intend to commit great bodily injury. Indeed, it would be difficult to find any other kind of intent when petitioner kicked his son in the ribs, banged his head and body against a wall repeatedly, attempted to damage Eddie's esophagus, and sat on top of him and repeatedly banged his son's head on the floor." Accordingly, the court found Peterson is ineligible for resentencing and denied his petition.

Peterson timely appealed.

## DISCUSSION

Peterson argues there is insufficient evidence supporting the trial court's finding that he intended to cause great bodily injury.

### 1. *Proposition 36, The Three Strikes Reform Act*

In November 2012, California voters enacted Proposition 36, the Three Strikes Reform Act (the Reform Act). With some exceptions, Proposition 36 modified California's Three Strikes law to reduce the punishment imposed when a defendant's third felony conviction is not serious or violent. (*People v. Valencia* (2017) 3 Cal.5th 347, 350.) It also enacted a procedure governing inmates sentenced under the former Three Strikes law whose third strike was neither violent nor serious, permitting them to petition for resentencing in accordance with Proposition 36's new sentencing provisions. (§ 1170.126, subd. (b).)

"The Reform Act's resentencing mechanism has three separate aspects: (1) the initial petition for recall of the sentence, (2) a determination of eligibility, and (3) the court's discretionary decision whether the defendant poses an unreasonable risk of danger to public safety." (*People v. Frierson* (2017) 4 Cal.5th 225, 234 (*Frierson*).) Once the defendant makes an initial showing of eligibility, the prosecution has the burden to show the defendant is ineligible on other grounds. (*Ibid.*) Those grounds include that the defendant intended to cause great bodily injury to another person during the commission of the offense for which the defendant is currently serving a sentence. (§§ 1170.126, subd. (e)(2), 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)

The prosecution must prove the defendant is ineligible for resentencing beyond a reasonable doubt. (*Frierson, supra*, 4 Cal.5th at p. 239.) The court is not limited to facts

5

encompassed by the prior judgment when making that determination.  (*People v. Estrada* (2017) 3 Cal.5th 661, 675–676; see *People v. Perez* (2018) 4 Cal.5th 1055, 1059 (*Perez*) [the trial court may rely on facts not found by the jury].)

## 2.    *Standard of Review*

We review the trial court's ineligibility determination for substantial evidence.  (*Perez, supra*, 4 Cal.5th at pp. 1059, 1066.) Under that standard, "we view the evidence in the light most favorable to the trial court's findings without reassessing the credibility of witnesses or resolving evidentiary conflicts." (*People v. Thomas* (2019) 39 Cal.App.5th 930, 935–936 (*Thomas*); see *Perez*, at p. 1066 [a reviewing court does "not reweigh the evidence; appellate review is limited to considering whether the trial court's finding of a reasonable doubt is supportable in light of the evidence"].)  We must affirm the order if the record " 'contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt' " that the defendant is ineligible for resentencing.  (*People v. Guilford* (2014) 228 Cal.App.4th 651, 661.)

On the issue of intent, our Supreme Court has explained that " '[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.] Moreover, the standard of review that applies to insufficient evidence claims involving circumstantial evidence is the same as the standard of review that applies to claims involving direct evidence.  'We "must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence. [Citation.]" [Citation.]  "Although it is the [trier of fact's] duty

to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the [trier of fact], not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]" [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. [Citation.]' [Citation.]" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

**3.      *Substantial Evidence Supports the Court's Decision***

Substantial evidence supports the trial court's determination that Peterson intended to cause great bodily injury to Eddie. "[W]here one applies force to another in a manner reasonably certain to produce, and actually producing, great bodily injury, the requisite intent can be presumed, since the intent with which an act is done may be inferred from the circumstances attending the act, including the manner in which the act was done and the means used." (*People v. Phillips* (1989) 208 Cal.App.3d 1120, 1124 (*Phillips*).)

Here, the testimony at trial shows Peterson's assault was particularly brutal. According to Eddie, Peterson kicked him in the ribs with such force that it knocked him back and caused his head to hit a counter. As Eddie prepared to leave the apartment, Peterson grabbed him by the hair and repeatedly rammed his head into a wall. Peterson then squeezed Eddie's esophagus as though he was trying to break it. He proceeded to sit on top of Eddie, grab his neck, and force his face into the ground.

During much of the attack, Eddie was holding his newborn baby and completely defenseless. Eddie was also legally blind,

7

stood three feet four inches tall, and weighed 80 pounds. Peterson, in contrast, was five feet ten inches tall and weighed around 150 pounds.

As a result of the assault, Eddie bled from his ear for at least an hour, which was consistent with a serious head injury. Eddie also suffered a bruise on his face, scratches on his neck, and sore ribs. The injuries were sufficiently severe that Eddie went to a hospital in an ambulance.

Given the nature and circumstances of the attack, as well as the resulting serious injuries to Eddie, the trial court could reasonably infer that Peterson intended to cause great bodily injury. (See *Phillips, supra*, 208 Cal.App.3d at p. 1124.) Accordingly, the court did not err in finding Peterson is ineligible for resentencing and denying his petition on that basis.

Peterson suggests there is no evidence showing Eddie actually suffered great bodily injury. Not so. As noted above, the record shows Eddie suffered prolonged bleeding from his ear, a bruise on his face, scratches on his neck, and sore ribs. This was sufficient to show great bodily injury. (See *People v. Washington* (2012) 210 Cal.App.4th 1042, 1047–1048 ["An examination of California case law reveals that some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury.' [Citations.]"]; *People v. Escobar* (1992) 3 Cal.4th 740, 749–750 [evidence of bruises, scrapes, stiff neck, and sore vagina was sufficient to show great bodily injury]; *People v. Bustos* (1994) 23 Cal.App.4th 1747, 1755 [evidence of multiple abrasions, lacerations, and contusions was sufficient to show great bodily injury].) Regardless, a court may infer an intent to cause great bodily injury even if the victim did not suffer such an injury. (*Thomas,*

*supra*, 39 Cal.App.5th at p. 938.)  Here, the brutal nature and circumstances of the attack were alone sufficient to support a finding that Peterson intended to cause great bodily injury to Eddie.

Peterson further contends the court could not reasonably conclude he intended to cause great bodily injury given he did not make verbal threats, he apologized immediately after the assault, and Eddie believed he could have done more harm.  While such circumstances might support a finding that Peterson lacked the requisite intent, they do not negate the substantial evidence summarized above that supports the court's decision.  Peterson, therefore, is essentially asking us to reweigh the evidence, which we will not do.  (*Perez, supra*, 4 Cal.5th at p. 1066.)

## DISPOSITION

We affirm the order denying Stanley Fitzgerald Peterson's petition for resentencing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P.J.                                    LAVIN, J.

9