Filed 1/11/24  P. v. Lane CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097697 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE017043) |
| v. | |
| ANDREW LANE, | |
| Defendant and Appellant. | |

Defendant Andrew Lane attempted to rob his girlfriend's two brothers in their home and pistol-whipped and shot their friend during the incident.  A jury found defendant guilty of residential burglary with a person present, assault with a semi-automatic firearm, two counts of attempted robbery (one for each brother), and unlawful possession of a firearm and semi-automatic ammunition by a felon; the jury also found multiple alleged enhancements true.  The trial court found a prior strike allegation true, declined to exercise its discretion to strike the prior strike conviction, and sentenced

1

defendant to 23 years 8 months in state prison plus two additional years for a trailing criminal matter.

On appeal, defendant contends: (1) insufficient evidence supports one of his attempted robbery convictions because the evidence showed he only demanded money from one, not both, of the brothers; (2) the trial court erred in finding the prior strike allegation true because nothing showed he admitted personally inflicting serious bodily injury on someone other than an accomplice within the meaning of Penal Code section 1192.7, subdivision (c)(8) when he pled to the battery with serious bodily injury offense; and (3) the court abused its discretion in refusing to strike his strike prior.[1]

Finding no merit to defendant's contentions, we shall affirm.

## I. BACKGROUND

Defendant was charged with first degree residential burglary (§ 459—count one), assault with a semi-automatic firearm of Mitchel (§ 245, subd. (b)—count two), three counts of attempted first degree robbery (§§ 664, 211—count three [against Mitchel], count four [against Anthony], count five [against Eric]), being a felon in possession of a firearm (§ 29800, subd. (a)(1)—count six), and unlawful possession of semi-automatic ammunition by a felon (§ 30305, subd. (a)(1)—count seven). Numerous enhancements were alleged, including the presence of someone other than an accomplice during the burglary (§ 667.5—count one), use of a semi-automatic firearm (§ 12022.5, subds. (a) & (d)—counts one and two), personal use of a firearm (§ 12022.53, subd. (b)—counts three through five), committing the offenses while released on bail or on his own recognizance in case No. 21FE015879 (§ 12022.1—counts two through seven), and personal infliction of great bodily injury (§ 12022.7, subd. (a)—count two).

---

[1] Further undesignated statutory references are to the Penal Code.

2

The information further alleged defendant had suffered a prior serious felony conviction in 2007 for battery with serious bodily injury (§ 667, subd. (a)), which was also a strike (§§ 667, subds. (b)-(i), 1170.12), and five circumstances in aggravation (§ 1170; Cal. Rules of Court, rule 4.421(a)-(b)). At trial, the evidence showed the following:

Eric and his brother, Anthony, lived together in a duplex in Sacramento. On October 2, 2021, their sister, Samantha, who was dating defendant, gave Eric her electronic benefits transfer (EBT) card to buy groceries but told him to leave $100 on the card; defendant was with Samantha when she dropped the EBT card off to Eric at the duplex. Contrary to her instructions, Eric spent all the money on the EBT card. Anthony was unaware of the details surrounding the EBT card since the matter was between Eric and Samantha.

The next day, Eric and Anthony were home with Samantha's former boyfriend, Mitchel, when defendant and his friend went to the duplex to ask for Samantha's EBT card. Apparently, defendant's uncle had paid Samantha $50 in exchange for $100 worth of food stamp benefits on the card.[2]

Eric gave defendant the EBT card, telling him that although the card currently had no money on it, his sister's benefits would renew in two days. Defendant took the card and left. A short time later, defendant and his friend returned and entered the duplex through the unlocked screen door; a heated argument between defendant and the brothers ensued regarding payment for the EBT card.

During the argument, defendant's friend handed him a gun. Defendant racked the slide, waved it around, and repeatedly demanded money. This scared Anthony and he thought defendant intended to shoot him. Anthony testified that defendant demanded

---

[2] Defendant explained that his uncle had paid Samantha cash for the food stamps on her EBT card.

3

money from Eric, but he did not approach Mitchel and ask him for any money or the EBT card, nor did he ask Anthony for money.

Defendant pistol-whipped Mitchel with the gun, which went off, hitting him in the neck. Defendant and his friend fled in a car while Anthony called 911. A recording of the 911 call was played for the jury.

Officers responded to the scene, and an ambulance transported Mitchel to the hospital where he was treated for a gunshot that entered the left side of his neck and exited near his left shoulder.

The duplex was equipped with a video camera that recorded the encounter, including audio; the recording was admitted into evidence and played for the jury. After reviewing the video, an officer opined that defendant had fired a semiautomatic firearm.

Defendant testified on his own behalf. He admitted three prior felony convictions in 2009, 2012, and 2015.

According to defendant, he had been in a relationship with Samantha for a few months. He was aware that Samantha previously had dated Mitchel, and he and Mitchel had twice engaged in physical altercations before the shooting.

On October 2, 2021, defendant accompanied Samantha to the duplex to drop off her EBT card with the understanding that Eric was supposed to leave a certain amount of money on the card. He went back to the duplex the next day to retrieve the card; he knocked on the security screen door and did not know with whom he was speaking because he could not see through the door. He denied intending to rob the man he spoke to, who he later learned during trial was Eric, or to use force to get the card back, but he claimed the duplex occupants were "pretty aggressive towards [him] just wanting what [he] felt like was [his] for payment."

He grabbed the gun from his friend to make the occupants back up and to create space between them because they were "pressing up on [him]." Mitchel was standing behind defendant, and defendant warned him to watch out. Defendant admitted pistol-

4

whipping Mitchel with the gun but denied that he intended to shoot him or the brothers. He also denied he intended to rob anyone or that he entered the duplex to burglarize it. He claimed he did not demand the EBT card aggressively, but that he did aggressively demand repayment for what he believed he was owed. When asked who he had the EBT card issue with that day—Eric, Anthony, Mitchel, or all three men—defendant responded that he only had an issue with Eric.

During cross examination, defendant admitted he demanded money at least eight times during the incident. He admitted demanding money from Eric, and when asked whether he had demanded money from Anthony when he looked at him on the video and told him he needed the money, defendant responded: "Yeah. Because he's yelling at me, if you didn't notice in the video." When the prosecutor again asked whether defendant was "yelling back, saying I need the money" *to Anthony*, defendant responded: "Yeah. I guess in the context, sure."

The jury found defendant guilty of first degree residential burglary with a person present (count one) and assault with a semiautomatic firearm of Mitchel (count two), and found the attached enhancements true. It found him not guilty of the attempted robbery of Mitchel (count three), but guilty of the attempted robbery of Anthony (count four), the attempted robbery of Eric (count five), and being a felon in possession of a firearm (count six) and ammunition (count seven). The enhancements attached to counts four and five were also found true. In a subsequent proceeding, the trial court found that defendant had suffered a prior strike conviction in 2007 for battery with infliction of serious bodily injury (§ 243, subd. (d)), and denied defendant's *Romero*[3] motion to strike the prior strike.

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

The court designated count two, the assault conviction, as the principal term, and sentenced defendant to the upper term of nine years, doubled to 18 years for the strike prior, and three years for the attached great bodily injury enhancement, plus a consecutive one-third the midterm of eight months for the attempted robbery of Eric (count five). The court imposed and stayed terms for counts four, six, and seven under section 654.[4] The court also imposed a two-year on-bail enhancement under section 12022.1, but stayed it pending the outcome of case No. 21FE015879.[5] The court dismissed all remaining enhancements under section 1385. Defendant's total aggregate sentence was 23 years eight months, plus a consecutive two years in case No. 21FE015879.

## II. DISCUSSION

### A.    *Sufficiency of the Evidence*

Defendant contends insufficient evidence supports his conviction for attempting to rob Anthony (count four) because the evidence failed to establish that he tried to obtain money from anyone other than Eric during the incident. The absence of substantial evidence to support count four, he argues, violates his due process rights. We disagree.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt" (*People v. Lindberg* (2008) 45 Cal.4th 1,

---

[4] Under section 654, the court imposed and stayed a concurrent one-half the midterm of two years plus 10 years for the firearm enhancement (§ 12022.53, subd. (b)) for count four, and the upper term of three years each for counts six and seven.

[5] Defendant subsequently pled to possessing methamphetamine while armed (Health & Saf. Code, § 11370.1) in case No. 21FE015879.

27), resolving all conflicts in the evidence and drawing all reasonable inferences to support the conviction. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 408; *People v. Small* (1988) 205 Cal.App.3d 319, 325 ["The substantial evidence rule is generous to the respondent on appeal"].) We do not reweigh the evidence or reevaluate a witness's credibility (*Lindberg, supra*, at p. 27), and " 'may conclude that there is no substantial evidence in support of conviction only if it can be said that on the evidence presented no reasonable fact finder could find the defendant guilty on the theory presented.' " (*Campbell, supra*, at p. 408.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Lindberg, supra*, at p. 27.)

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) "An attempted robbery consists of two elements: (1) the specific intent to commit the robbery, and (2) a direct, unequivocal, overt act (beyond mere preparation) toward its commission." (*People v. Gonzalez* (2021) 12 Cal.5th 367, 382; see *People v. Medina* (2007) 41 Cal.4th 685, 694.) "[A]n attempt to steal may be proved by inference from all of the circumstances of the case." (*People v. Vizcara* (1980) 110 Cal.App.3d 858, 863.)

Here, defendant himself conceded during cross-examination that he demanded money from Anthony while waving a firearm around Anthony's home in an attempt to intimidate him and the other duplex occupants. When specifically asked on cross whether he had demanded money from Anthony when he was seen on the video looking at him while saying he needed the money, defendant responded: "Yeah. Because he's yelling at me, if you didn't notice in the video." When the prosecutor again asked whether defendant was "yelling back, saying I need the money" *to Anthony*, defendant responded: "Yeah. I guess in the context, sure."

7

This testimony constitutes substantial evidence from which the jury could find that defendant took a direct but ineffectual step towards taking money from Anthony by force or fear by threatening him with bodily injury from the firearm while repeatedly demanding money for the EBT card. The jury, moreover, was shown video with an audio recording from inside the duplex that captured all the events preceding the shooting. Based on defendant's testimony and this video, jurors could reasonably determine that defendant demanded money from Anthony.

While the evidence might also be reconciled with a contrary finding that defendant was merely trying to explain to Anthony why he was demanding money from Eric, it does not mean that the totality of the evidence was insufficient to find defendant guilty of attempting to rob Anthony. (*People v. Lindberg, supra*, 45 Cal.4th at p. 27.) Nor does the fact that Anthony claimed defendant did not demand money from him compel reversal. The jury reasonably could disregard Anthony's testimony, especially since Anthony was reluctant to testify and had to be taken into custody on a warrant to ensure his presence at trial.

Based on the totality of the evidence, jurors could reasonably conclude that defendant attempted to deprive Anthony of money by means of force or fear when he repeatedly yelled at him and demanded money, while waving a firearm at Anthony inside his home.

B.      *Prior Serious Felony Conviction*

Defendant contends the evidence is insufficient to support the trial court's true finding on the prior strike allegation, which is premised on his prior conviction of battery with serious bodily injury under section 243, subdivision (d). He asserts the record does not show that (1) the battery victim was not an accomplice, and (2) he personally inflicted great bodily injury rather than aided and abetted another person in doing so, both of which are necessary requirements for the battery offense to qualify as a strike conviction under section 1192.7, subdivision (c)(8).

8

*1.     Additional Background*

The fifth amended information alleged defendant had suffered a prior strike conviction in 2007 for a battery with serious bodily injury offense.  The information stated:  "It is further alleged that . . . defendant . . . was on June 25, 2007, . . . convicted of the crime of Battery Personally Inflicting Serious Bodily Injury in violation of Section 243[, subdivision ](d) . . . , a serious felony, within the meaning of Section 1192.7[, subdivision ](c) . . . , and that by reason thereof, that he comes within the provisions of Section 667[, subdivisions ](b)-(i) and Section 1170.12."

Defendant waived a jury trial on the strike allegation.  Before doing so, defendant asked the trial court why his prior strike was sometimes listed with a date in 2009 and explained to the court that his "strike came from 2007."

At the subsequent court trial on the prior strike, the prosecutor introduced a section 969b prison packet with certified copies of records related to Sacramento County case No. 07F05204, including a 2007 felony complaint charging defendant with robbery (§ 211—count one) and battery with serious bodily injury (§ 243, subd. (d)—count two).  As relevant to count two, the complaint alleged defendant "did willfully and unlawfully use force and violence upon the person of [the victim], resulting in the infliction of serious bodily injury on such person."  The complaint further stated:  " 'NOTICE:  The above is a serious felony within the meaning of . . . Section 1192.7[, subdivision ](c),' " and also alleged that "the victim . . . was not an accomplice in this crime and the defendant personally inflicted the serious bodily injury, within the meaning of . . . Section 1192.7[, subdivision ](c)(8)."

In addition to the complaint in case No. 07F05204, the prison packet included the following certified documents:  (1) a plea minute order for a plea entered on June 25, 2007, showing defendant pled no contest in case No. 07F05204 to "Ct. 2 PC 243(D);" (2) a minute order listing defendant's charges, among others, as count two (battery with serious bodily injury) with an attached allegation under section 1192.7, subdivision

9

(c)(8), and showing an entry dated July 23, 2007, wherein count one was dismissed and defendant was sentenced to five years formal probation; (3) a minute order and order of probation dated July 23, 2007, which stated, "Defendant was convicted as follows:[¶] 06/25/2007 CT 2 PC 243(D) FEL Nolo contendere [¶] PC 1192.7(c)(8)," and (4) an abstract of judgment filed November 3, 2009, reflecting a battery against person with bodily injury conviction (§ 243, subd. (d)) on June 25, 2007, with imposition of a two-year prison term.[6]

The prison packet also included documents related to Sacramento County case No. 12F03881 showing defendant was charged in June 2012 with five criminal counts and that the complaint alleged his prior 2007 battery with serious bodily injury conviction as a strike prior. A plea minute order reflects that defendant pled no contest to two Vehicle Code counts and admitted the strike prior allegation in case No. 12F03881, and the abstract of judgment shows defendant was sentenced on June 19, 2012, pursuant to section 667, subdivisions (b)-(i) or section 1170.12.

After reviewing the certified records in the prison packet, the trial court found the strike allegation true beyond a reasonable doubt. The court therefore doubled defendant's sentence under the "Three Strikes" law.

2.      *Analysis*

The prosecution bore the burden of proving that defendant's battery with serious bodily injury conviction qualified as a prior strike conviction. (*People v. Frierson* (2017) 4 Cal.5th 225, 233.) In reviewing the sufficiency of the evidence of the prior conviction, we determine whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt. (*People v. Tenner* (1993) 6 Cal.4th 559, 566-567.)

---

[6] According to the abstract of judgment, the sentencing hearing occurred on October 28, 2009.

Under the Three Strikes law, a defendant's sentence may be enhanced upon proof that he or she previously has been convicted of a strike, i.e., a "violent felony" as defined in section 667.5, subdivision (c), or a "serious felony" as defined in section 1192.7, subdivision (c). (§§ 667, subd. (f)(1), 1170.12, subd. (d)(1).) A serious felony, as relevant here, includes "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice." (§ 1192.7, subd. (c)(8).)

The parties agree, as do we, that defendant's conviction for battery with serious bodily injury under section 243, subdivision (d) does not qualify as a strike unless he personally inflicted great bodily injury on a non accomplice. (§ 1192.7, subd. (c)(8); see e.g., *People v. Bueno* (2006) 143 Cal.App.4th 1503, 1508 (*Bueno*) ["one can commit a battery within the meaning of section 243, subdivision (d) without committing a serious felony within the meaning of section 1192.7, subdivision (c)(8)"].) Relying on section 969f and *Bueno*, defendant argues that the certified documents in the prison packet do not establish beyond a reasonable doubt that he *separately* admitted to personally inflicting great bodily injury on a non accomplice when he pled no contest to the battery charge. We disagree.

Section 969f, subdivision (a) provides that whenever a defendant has committed a serious felony as statutorily defined in section 1192.7, subdivision (c), the prosecutor may charge the facts that make the crime a serious felony in the accusatory pleading. "If the defendant pleads guilty of the offense charged, the question whether or not the defendant committed a serious felony as alleged shall be separately admitted or denied by the defendant." (§ 969f, subd. (a).)

Defendant does not dispute that the prosecutor, pursuant to section 969f, subdivision (a), included additional allegations in the complaint elevating the battery charge to a serious felony, as the complaint expressly alleged: " 'The above is a serious felony within the meaning of . . . Section 1192.7[, subdivision ](c),' " and that "the victim . . . was not an accomplice in this crime and the defendant personally inflicted the serious

11

bodily injury, within the meaning of . . . Section 1192.7[, subdivision ](c)(8)." He argues, however, that nothing in the record shows he *separately admitted* these additional allegations as section 969f, subdivision (a) requires.

In so arguing, defendant primarily relies on *Bueno, supra*, 143 Cal.App.4th 1503, 1508 where the appellate court similarly considered whether a conviction for battery with serious bodily injury under section 243, subdivision (d) was a strike prior. There, the court found no evidence showed the defendant admitted the allegations that would have rendered the offense a serious felony. (*Bueno, supra*, at pp. 1507-1511.) According to the court, the plea form and the minute order reflected a plea of no contest to the alleged violation of section 243, subdivision (d), but no admission that the offense was a serious felony. (*Bueno, supra*, at p. 1508.)

But, unlike in *Bueno*, here the record below *does* contain other evidence showing defendant admitted the additional serious felony allegation in the complaint. While it is true that the plea minute order refers to pleading no contest to "Ct. 2 PC 243(d)," the plea minute order does *not* state that the section 1192.7, subdivision (c)(8) allegation was dismissed. Moreover, the sentencing minute order and order of probation states:

"Defendant was convicted as follows:

"06/25/2007 CT 2          PC 243(D) FEL       Nolo contendere

"                         PC 1192.7(C)(8)."

The plea minute order as well as the minute order and order of probation support the trial court's finding that, in pleading to the 2007 battery offense, defendant admitted the *additional* allegations that he personally inflicted great bodily injury on a non accomplice as expressly alleged in the information.

Furthermore, as the People note, in a 2012 criminal matter (case No. 12F03881), defendant himself admitted that the same battery offense constituted a strike prior. The prison packet in this case included certified documents showing a complaint in case No. 12F03881 alleging the same battery conviction as a strike, defendant's plea form

12

expressly admitting the strike allegation, and an abstract of judgment reflecting that defendant was sentenced in case No. 12F03881 under the Three Strikes law based on his strike admission. Thus, the issue of whether defendant's prior battery conviction constituted a strike has already been litigated, and defendant admitted that it was. (*People v. Cooper* (2007) 149 Cal.App.4th 500, 518 [principles of res judicata and collateral estoppel apply in criminal proceedings; collateral estoppel applies when a factual issue which is identical to an issue in the current case was actually litigated and necessarily determined in a prior final adjudication].)

Such evidence is not analogous, in our view, to a defendant's silence when the court described a victim's injuries while discussing restitution, post-plea probation report adoptive admissions, or unsworn statements from a defendant and others found problematic in the cases defendant cites. (See e.g., *People v. Thoma* (2007) 150 Cal.App.4th 1096, 1101-1102 [defendant's silence in response to prior sentencing court's description of victim's injuries when discussing restitution not admissible as adoptive admission as to the truth of the nature of the underlying injuries for alleged strike offense]; *People v. Trujillo* (2006) 40 Cal.4th 165, 179 [a defendant's statements in a post-plea probation report that he used a knife to stab the victim were not part of record of prior conviction because they do not reflect facts of the offense for which the defendant was convicted as the prosecutor dismissed the weapon enhancement as part of plea bargain]; *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1112, 1127-1128 [where record showed defendant entered an *Alford* plea that did not admit factual basis underlying the crime, unsworn post-plea statements by defendant, his counsel, and then-wife not admissible to prove strike].) Defendant's reliance on *Thoma*, *Trujillo*, and *Roberts* for the proposition that the trial court here could not consider the certified documents related to case No. 12F03881 where defendant admitted the battery as a strike offense is misplaced.

13

This case also differs markedly from *Bueno* where the People contended, without more, that in pleading no contest to the battery charge, *Bueno* admitted the offense was a serious felony simply because the information alleged it was a serious felony within the meaning of section 1192.7, subdivision (c)(8). (*Bueno, supra*, 143 Cal.App.4th at p. 1509.) The prosecutor here presented more than simply the bare allegation that the complaint referred to section 1192.7, subdivision (c).

The prison packet contained substantial evidence to support the trial court's finding beyond a reasonable doubt that defendant pled to the battery offense as a serious felony when he entered his plea in 2007. The court did not err in finding the strike allegation true.

## C. *Denial of Romero Motion*

Having determined that the trial court properly found defendant's prior strike true, we consider whether it abused its discretion in declining to grant defendant's *Romero* motion to strike the prior strike conviction. We find no abuse of discretion here.

### 1. *Additional Background*

Defendant's *Romero* motion urged the court to strike his prior strike conviction because it was remote, and his criminal conduct had not escalated since that time. In denying the motion, the court found that, although the strike occurred 15 years ago, defendant had not lived a crime-free life since the conviction and had an extensive criminal history with numerous additional convictions.

While the court acknowledged that the remoteness of the strike and defendant's age at the time he committed the offense were factors in favor of dismissing the strike, it found that such factors did not outweigh defendant's lengthy criminal record. As the court noted, defendant's criminal history included the strike for which he received a two-year sentence following four violations of probation; a 2009 resisting a peace officer offense; a 2011 vehicle theft with one year in jail; 2012 convictions of felony vehicle theft and driving under the influence that resulted in a second prison commitment; a 2015

14

possession of marijuana for sale with a prison sentence (which was subsequently reduced to a misdemeanor); a 2018 offense for bringing drugs into a correctional facility; and two pending cases, one in 2020 for hit-and-run with injury and driving without a license, and another in 2021 for possession of methamphetamine while armed and being a felon in possession of a firearm.  And, according to the probation report, defendant had been involved in four major jail incidents, including an assault on an inmate.  Given the above, the court found defendant was not outside the spirit of the Three Strikes law.

2.    *Analysis*

A trial court has discretion to strike a prior serious felony conviction only if the defendant falls outside the spirit of the Three Strikes law.  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  "[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so.  In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper."  (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)  In deciding whether to strike a prior conviction, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams, supra*, at p. 161.)

The trial court's "failure to . . . strike a prior [felony] conviction allegation is subject to review under the deferential abuse of discretion standard."  (*People v. Carmony, supra*, 33 Cal.4th at p. 374.)  A trial court abuses its discretion when it refuses to strike a prior felony conviction only in limited circumstances, such as where the court is unaware of its discretion to dismiss or considers impermissible factors in refusing to dismiss, or if the sentencing norm under the Three Strikes law leads, as a matter of law,

15

to an arbitrary, capricious, or patently absurd result under the circumstances of the individual case. (*Id.* at p. 378.) It is not sufficient to show that reasonable people might disagree about whether to strike a prior conviction. (*Ibid*.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

Here, the record reveals the trial court was aware of its discretion to strike defendant's prior felony convictions and that it considered relevant factors in making its decision. The court properly considered defendant's youthfulness (19 years old) when he committed the strike nearly 15 years before the present offenses. The mere passage of time, however, does not establish an abuse of discretion in declining to dismiss a strike. (See, e.g., *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [age of 20-year-old conviction not determinative where the defendant had not led a " 'legally blameless life' " since his last strike conviction].)

Thus, defendant's relative youth at the time of the strike offense does not mean the court abused its discretion by denying defendant's *Romero* motion. Given defendant's nearly unbroken chain of criminality as he aged, which the trial court recounted in its ruling, the court could reasonably conclude the seriousness of defendant's offenses were increasing and not decreasing with the presumed maturity that accompanies aging.

The court appropriately balanced defendant's age and the remoteness of the strike against the seriousness of the present offenses and defendant's extensive criminal history, some of which also involved a firearm like in this case. After evaluating and weighing all these factors, the court found defendant was not outside the spirit of the Three Strikes scheme. On this record, we cannot say the court abused its discretion.

## III.  DISPOSITION

The judgment is affirmed.


/S/

_____
RENNER, J.



We concur:


/S/

_____
HULL, Acting P. J.


/S/

_____
KEITHLEY, J.*


_____

* Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17